SCHOOLHER, BERNSTEIN & CO. v. J. V. HUTCHINS, ASSIGNEE.

(Case No. 5483.)

1. STATUTORY ASSIGNMENT—A deed of assignment which declares the insolvency of its makers, conveys to the assignee, for the benefit of all their creditors, all their property real and personal, and provides for a *pro rata* distribution of its proceeds, in proportion to their respective claims, is an assignment under the statute.

2. SAME—DEBTOR'S RELEASE—A deed of assignment containing no stipulation requiring releases of the debtor by accepting creditors, but stating that the purpose of the assignors is to make a just distribution of the assets among such creditors as accept the assignment, and providing for a *pro rata* distribution among such accepting creditors, is not in contravention of the statute.

3. SAME—NON-ACCEPTING CREDITORS—Creditors who do not establish their claims under the assignment, can reach only that which is not found necessary to satisfy the claims of accepting creditors and costs and expenses of the assignment.

4. SAME—FOREIGN CREDITORS—Assignments made under the act of March 24, 1879, are binding upon creditors, citizens of and resident in another state, as fully as upon citizens of this state here resident. This rule is not different when the release of the debtor is a condition upon which creditors may take under the assignment. (Keating *v.* Vaughan, 61 Tex., 519.)

5. SAME—POWERS AND DUTIES OF THE ASSIGNEE—See opinion for powers conferred upon the assignee by the deed held not in excess of those allowed the assignee by the statute. To expressly grant in the deed of assignment the powers conferred by the statute upon the assignee, cannot invalidate the assignment. If the deed attempts to confer powers which, under the law, the assignee could not legally exercise in the execution of the trust, this would not be sufficient reason for holding the assignment invalid.

6. SAME—When an assignment is made under the statute, the rights of creditors vest, and may be protected to the extent allowed by the law. The assignee may be compelled to perform all duties required of him by law, and restrained from exercising any power not conferred by law.

7. RIGHTS OF ASSIGNEE—Although the complete right to execute the trust may not vest in the assignee before the execution of his bond, the title of the property passes to him as a trustee by the execution and delivery of the deed of assignment; and the right of creditors to fix liens, by attachment or otherwise, upon the property, ceases.

8. SAME—The vestiture of title in the assignee through the trust deed, and his possession under it, would give him the right to maintain an action against any person seeking illegally to divert the fund from the purposes contemplated by the law and the deed of assignment, whether his bond was sufficient or not.

9. SAME—If the property is illegally taken from the assignee's possession, nothing subsequently occurring can affect his right to recover, or the measure of his damage. It is immaterial, as between the creditors and the assignee, that he bought a portion of the assigned goods which had been seized under writs of attachment sued out by the creditors, and sold by the sheriff under an order of court. If the assignee's action is based on the fact of conversion, he may recover the value of the goods when taken.

10. EVIDENCE—The admission of improper evidence, although it be subsequently withdrawn from the jury in so far as this can be done, is sufficient ground in some cases for the reversal of a judgment; but unless there is reason to believe

that the improperly admitted evidence influenced the jury, the judgment will
not be reversed. See opinion.

11. SAME—The opinion of witnesses as to value, when formed with reference to an
improper criterion of value, is incompetent evidence. See opinion.

12. MEASURE OF DAMAGE—See opinion for a correct charge upon the measure of
damage in a suit based upon an illegal conversion of perishable property after-
wards sold by an order of court.

13. CHARGE—If a sufficient and correct charge has been given upon a point, that is
sufficient ground for refusal to give another charge upon the same point, although
it may be correct and in no manner calculated to mislead.

APPEAL from Hays. Tried below before the Hon. L. W. Moore.

This was an action to recover damages for an unlawful seizure and
conversion of property. It was brought by J. V. Hutchins, as as-
signee of P. R. Turner & Co.—P. R. Turner, W. B. Moore and J. E.
Peters—against H. E. Barber, sheriff of Hays county, and the sureties
on his official bond, the damage being placed at $10,000. The petition
alleged that defendant seized and converted the property as complained
of under two writs of attachment issuing from the district court of
Hays county, against P. R. Turner & Co., and in favor of M. Wolff &
Co. and Schoolher, Bernstein & Co. The petition was filed August 25,
1883. Defendants' answer contained a general denial; plea of not
guilty; plea justifying the seizure because the property belonged to
Turner & Co. at the time the attachments were levied; a plea alleging
that plaintiff claimed title to the property under a pretended deed of
assignment, made to him by P. R. Turner & Co., July 4, 1883, under
our state insolvent law; that when the attachments were levied plaintiff
had not given bond as such assignee, nor qualified as such, and was
not entitled to either the title or possession of the property; that
plaintiffs in the writs of attachment were non-residents of the state,
and, as to them, the insolvent law was unconstitutional, being con-
trary to and violative of section ten, article one, of the constitution of
the United States; that the deed of assignment was, as to the plaintiffs
in the writs and all creditors of P. R. Turner & Co., fraudulent upon
its face, in contravention and violation of the state insolvent law, ille-
gal, null and void, for the following reasons, viz: first, because it ap-
peared upon its face to have been executed with intent to delay, hin-
der and defraud creditors; second, because if executed according to its
terms, it would delay, hinder and defraud creditors; third, because
the assignment was executed as a general assignment under our state
insolvent laws, and its benefits were limited to such creditors as ac-
cepted it, yet such accepting creditors were not required to release the
debtor after they had received their *pro rata* of the assigned estate;
fourth, because the assignment provided that the assignee might em-

ploy the assignors as clerks to aid in the disposition of the assigned property, at a salary to be fixed by the assignee, thus permitting him to make the assignors preferred creditors of their own bankrupt estate; fifth, because the assignment purported to be made by a mercantile firm, and only conveyed the partnership property, and the assignee had only given bond to administer the partnership estate; sixth, because the assignment did not state any time in which it was to be executed, and left it within the power of the assignee to prolong the execution of the same indefinitely; seventh, because the assignment in effect authorized the assignee to sell the assigned property on credit; eighth, because the assignment authorized the assignee to contract unusual and unnecessary debts under the form of expenses of administration; ninth, because the assignment authorized the assignee to make *pro rata* distribution of moneys received before, under the statute, he would be authorized so to do; a plea alleging that the deed was excuted with intent to hinder, delay and defraud creditors, setting out in full the circumstances under which it was executed; and a plea alleging that when the property was sold under the writs, J. V. Hutchins purchased a large portion of same, and that if he was entitled to recover damages in this case, the measure of damage as to the property bought in by him was the amount paid for it by him.

Defendant, Barber, alleged the execution by M. Wolff & Co., and Schoolher, Bernstein & Co., of certain indemnity bonds to him, and asked that they and the sureties on the bond be made parties defendant to the suit, and for judgment over against them in case plaintiff had a recovery in this action. M. Wolff & Co., and Schoolher, Bernstein & Co. joined in the above answer. Green and Hofheinz, sureties on one of the indemnity bonds, excepted to the portion of the answer asking to make them parties, and asked to be dismissed with their costs. The exceptions were sustained and they dismissed over objection of defendant, Barber. The other sureties made no answer, and judgment was rendered over against them.

Plaintiff by supplemental petition demurred generally and specially to the answer, and prayed for judgment against M. Wolff & Co. and Schoolher, Bernstein & Co. The general demurrer was overruled and special exception sustained only to the extent of holding that the assignment in question was not in law void upon its face, and that all matters relating to a purchase by plaintiff of part of the assigned property, and to the subsequent management of the trust by the assignee presented no defense to plaintiff's action.

The case was tried September 11, 1884, and resulted in a judgment in favor of plaintiff against defendant Barber, and the sureties on his

official bond, and against M. Wolff & Co. and Schoolher, Bernstein & Co., and in favor of Barber against M. Wolff & Co. and Schoolher, Bernstein & Co., and the sureties on the indemnity bond.

The judgment against appellants, Schoolher, Bernstein & Co., was for $2,956.58 and interest.

*Walton, Hill & Walton*, and *Hutchison & Franklin*, for appellants, that the deed of assignment was in conflict with the statute regulating assignments, cited: Acts of 1879, p. 53; Jaffray *v.* McGehee, 107 U. S., 361.

On the effect of the state insolvent law beyond the limits of the state, they cited: Beers & Smith *v.* Rhea, 5 Tex., 349; Pratt *v.* Chase, 4 Am. Rep., 718; Hawley *v.* Hunt, 1 Am. Rep., 273; Stoddard *v.* Harrington, 1 Am. Rep., 92; Cook *v.* Moffatt, 5 How., 310; Boyle *v.* Zacherie, 6 Pet., 348; Ogden *v.* Saunders, 12 Wheat., 213; Storey on Cont., sec. 1390 ; Storey on Confl., sec 341; Hayes *v.* Heidelberg, 9 Penn. St., 203; Ins. Company *v.* Wallis, 23 Md., 173; Bump on Fraud. Conv., 463.

On the other points discussed in the opinion, they cited: Suth. on Damages, 239; Baldwin *v.* Peet, 22 Tex., 708; Cooley on Torts, 436; Mims *v.* Mitchell, 1 Tex.. 443; Johnson *v.* Erskine, 9 Tex., 9; Block *v.* Sweeney, 63 Tex., 420; Blum *v.* Merchant, 58 Tex., 400; Hamlin *v.* Tucker, 60 Tex., 171; Abbott's Trial Ev., 308; Donaho *v.* Fish Bros., 58 Tex., 164; Hubbard *v.* Lord, 59 Tex., 386; State Insolvent Law.

\* *Hancock & Shelley*, and *A. J. Peeler*, for appellee.

STAYTON, ASSOCIATE JUSTICE.—While the deed of assignment involved in this case does not declare, in so many words, that it was intended to be in compliance with the statute then in force in this state in relation to assignments for the benefit of creditors, yet it is evident that such was the intention of its makers. It declares the insolvency of its makers, conveys to the assignee for the benefit of all their creditors, all their property, real and personal, and provides for a *pro rata* distribution of its proceeds in proportion to their respective claims. An assignment which does this is an assignment under the statute. There were several grounds on which the assignment was claimed, in the answers of the defendants, to be invalid, and to so much of the answers a demurrer was sustained, and this is assigned as error.

The deed of assignment does not contain stipulations requiring the

---

\* [NOTE.—The brief of counsel for appellee was not found with the transcript.—REPORTER.]

release of the debtors by such creditors as accept under it, but declares the purpose of its makers to be "to make a just and equal distribution of our assets among all of our creditors, or such of them as will accept this assignment;" and it provides for "*pro rata* distribution among such of our creditors as may accept this assignment." It is urged that this is in contravention of the statute, in that it does not require releases in favor of the debtors, and yet requires creditors to accept under the assignment in order to participate in the distribution of the assets.

Those provisions in reference to acceptance by creditors evidently mean nothing more than that all creditors who present their claims and establish them, as the statute provides they may, shall participate in the distribution. This is exactly what the seventh, twelfth and fifteenth sections of the act regulating such assignments provide for, and the insertion in the deed of assignment of requirements, such as the law creates and enforces, certainly does not invalidate it.

The eighth section of the law provides that any creditor who does not consent to the assignment, *i. e.*, accept of its terms by establishing his claim under it, may garnishee the assignee for any excess of the estate remaining in his hands after payment of the claims of those who do prove up their claims, and the costs and expenses of the assignment. Such non-accepting creditors can reach only that which is not found to be necessary to satisfy the claims of accepting creditors and costs and expenses of the assignment. It was urged that the assignment could not operate against the defendants, because Schoolher, Bernstein & Co. were residents of another state.

In Keating *v.* Vaughan, 61 Tex., 519, this question was examined, and therein it was held that assignments made under the act of March 24, 1879, were binding upon creditors, citizens of and resident in another state, as fully as upon citizens of this state, here resident. The authorities cited in that case show that this is the well established rule even when the assignment makes the release of the debtor a condition upon which creditors may take under it. There were provisions in the deed of assignment, that the assignee might sell the trust property at public or private sale, as might be deemed best; that he might employ such assistance as was necessary, and that the assignors, or some of them, might be employed to aid in the disposition of the assigned property, with such compensation as he might deem right and proper; that he might incur such expenses in carrying out the assignment as might be reasonable and proper, in the way of rents, insurance, telegraphing, clerks' hire and such other necessary expenses as are usual in such business; that he should receive a reasonable and

just compensation for his services in the execution of the trust; that on receipt of money he should make a *pro rata* payment to accepting creditors, after paying necessary expenses.

In view of those provisions in the deed of assignment, the following proposition is urged:

"The assignee derives his authority to act and his powers to administer from the deed of assignment, and when the terms and conditions of the deed are in conflict with the terms and requirements of the state insolvent law, the assignee cannot know whether to act under the one and violate the law, or to follow the provisions of the other and violate the terms of the deed of assignment, and a deed of assignment containing any such terms and conditions is void as to creditors, because they cannot know, when they accept same, whether the assignee will administer his trust under his deed or the statute."

We do not see in what particular the assignment confers upon the assignee a single power other than under the law an assignee might properly exercise, in the absence of any declaration in the instrument conveying the property to him as to what powers he might exercise. The express grant of such powers as the law would confer on the assignee certainly cannot render an assignment invalid. If, however, the deed of assignment attempted to confer powers which, under the law, an assignee could not legally exercise in the execution of the trust, this would not be a sufficient reason for holding an assignment invalid. When an assignment is made under the statute the rights of creditors vest, and they can compel the assignee to exercise the powers which the law expressly, or by implication, confers upon him, as can they restrain him if he attempts to exercise powers which the law does not confer upon him.

They need not remain in any state of uncertainty as to how the assignee will execute his trust, so long as they have the power to compel him to execute it according to law, or be removed for mismanagement, and have some other person appointed. The assignment was made on July 4, 1883; was on the same day recorded, and the assignee at once entered into possession of the goods, after which the attachments were levied, but the assignee did not file his bond until the next day. This being true, the answer denies the right of the assignee to the possession of the goods as well as his right to maintain this action.

The title to the property passed to the assignee as a trustee when the deed of assignment was executed and delivered, although his complete right to execute the trust may not have existed until the bond required by the statute was executed. This is clear from an inspection of the first and second sections of the act of March 24, 1879,

which, in this respect, are but interpreted by the act of April 7, 1883, which took effect ninety days after adjournment. The latter act provides that "if such assignee shall not, within five days after the delivery of the deed of assignment, execute an approved bond, and file the same with the county clerk, as herein provided, such assignment shall nevertheless take effect as against the assignor and his creditors."

When the rights of creditors vested by the delivery of the deed of assignment, the right of one or more creditors to enforce the payment of their debts by seizing the assigned property by writs of attachment or otherwise, as a means of fixing liens upon it, or subjecting it to sale for the purpose of paying the claims of such particular creditors, ceased.

When this action was brought the assignee was not only clothed with the title to the assigned property, but had complete right to institute and maintain an action against any person who had illegally seized or converted it.

The petition contains all the averments necessary to entitle the assignee to recover for an illegal seizure and conversion of the property which the defendants caused to be taken under their writs of attachment, and subsequently sold as perishable property, under an order of court. That the assignee may have bought a part of the property which the defendants caused to be seized and sold by the sheriff, under the order of the court, cannot affect either his right to recover or the measure of damages. His rights in these respects were fixed when the property was taken from his possession, and the defendants cannot be heard to assert that their liability or its measure can be made to depend on what subsequently occurred.

The defendants illegally seized, or caused the goods to be seized, and, if the evidence is entitled to credence, held them for some time before they were sold, and during that time so dealt with them as to greatly depreciate them in value, and now claim that as the assignee bought some of the goods at the sale, they should only be held responsible for such sum as he paid for them. To entertain such a view of the law, would be to hold that the defendants, by their own acts, might cause the property to depreciate in value, and avoid responsibility for such depreciation by returning it to its true owner, who had elected to recover its value at the time it was taken from his possession.

If A should cause the property of B to be seized and sold for the debt of C, and at such sale B should become the purchaser of the property, for a sum ever so much less than its real value, this certainly would not affect his right to recover from A the value of his property

at the time of seizure, even though when he received it back under the purchase, it was as valuable as when first taken from him. This is not an action to recover the property with damages for its detention, but an action for its value based on the fact of conversion.

If the fact that the trustee bought some of the trust property at the sale made by the sheriff gives any right, as between him and the creditors which he represents, to have the property so purchased still considered a part of the trust estate, a matter which we need not consider, that does not concern the defendants. What we have said leads to the conclusion that the court below did not err in sustaining exceptions to some of the defendants' answers, and did not err in admitting in evidence the deed of assignment.

The bonds which were given by the assignee were in substantial compliance with the law, and gave security to the assignor and all creditors for the faithful administration of the entire trust fund which passed by the deed of assignment, which, without reference to that executed separately by P. R. Turner, was sufficient to pass title to all the property owned by the persons who composed the firm of P. R. Turner & Co., either as co-partners, or individually. Coffin *v.* Douglass, 61 Tex., 406.

If, however, the bonds had not been of that character, the vestiture of title in the assignee through the trust deed, and his possession under it, would give him the right to maintain this action against any person seeking illegally to divert the fund, or any part of it, from the purpose contemplated by the law and by the deed of assignment. The fact that the illegal conversion was in the interest of, or instigated by, one or more creditors of the assignors, and that it may have been consummated through the illegal use of the process of a court, cannot change the rule.

During the trial the plaintiff was permitted to prove "what the goods seized were worth at the time of the seizure, at New York cost, the market where bought, and that, in the opinion of the assignee, he could have worked them off at New York cost." The defendants objected to this evidence, but were permitted at the same time to prove "that the reasonable value of the goods seized at San Marcos, when seized, was what they brought in open market at a fair open auction sale in said market, on sale by the sheriff under order of court." The sale was made by the sheriff a considerable time after the seizure.

After this evidence for the respective parties was admitted, the court adjourned for the day, and on the meeting next morning excluded it all from the jury.

It is urged that the court erred in this, that the evidence having

gone before the jury, they were influenced by it. It has been held that the admission of improper evidence, although the same is subsequently withdrawn from the jury, in so far as it can be done, is sufficient ground in some cases for the reversal of a judgment. Tucker *v.* Hamlin, 60 Tex., 171.

This rule, however, is not applied, unless there is reason to believe that the evidence may have improperly influenced the jury. The opinion of the assignee that he could have disposed of the goods at original cost ought not to have been admitted, and that introduced by the defendants was clearly inadmissible. The one, as the other, likely to mislead the jury, and probably not of unequal weight, we see no reason to believe that the jury could have been influenced, to the prejudice of the defendants, by the ruling of the court, and especially so, when there was ample evidence to sustain the verdict.

The defendants asked a number of witnesses the following question: "If you know, you may state what was the reasonable market value of the goods seized, for cash, in bulk, and at open, fair, public auction, at the time when seized in San Marcos," expecting to prove by the witnesses that under such a test of value the goods would be shown to be of less value than found by the jury. The court refused this evidence, and, we think, correctly. This evidence would have tended to show what the goods would have sold for if sold in bulk at public auction. This would not have been a fair criterion of value. Thus sold, they might not have brought anything like their real value. If what they would have sold for at the time be the test of value, then what they would have sold for at a sale made in such manner as a prudent man would have sold them, with a view to realize their fair value, would be the test, and the net proceeds the measure of damages.

The goods were seized on July 4, 1883, at the place where the cause was tried, and upon the measure of damages the court instructed the jury as follows: "The plaintiff is entitled to recover the fair and just cash value of the goods on July 4, 1883, with eight per cent. interest to this date. In determining this value you will find what the goods were reasonably worth in this market in cash, on July 4, 1883, and you will find in favor of plaintiff a verdict for this sum with eight per cent. interest to date thereon." This charge was correct, and excludes the idea that the jury were at liberty to estimate the value of the goods at such sum as they might subsequently have been sold for at retail in the ordinary course of a retail mercantile business.

That the jury was sufficiently and correctly instructed, as to the measure of damages, was a sufficient reason for refusing to give the instruction asked by the defendants upon that subject, even if the

charge asked had been in all respects technically correct and in no manner calculated to mislead. The charge asked, however, was calculated to mislead, in that it did not permit the jury to consider simply "the reasonable value of the goods," by which was meant the reasonable value of all the goods seized, but required the jury to consider them with reference to their value in bulk, in entirety as a stock, and so connected this with the idea of a sale in bulk as to make the charge objectionable.

There is nothing in the record to indicate that the judgment is excessive, nor to indicate that a just result has not been reached, and the judgment will be affirmed.

AFFIRMED.

[Opinion delivered May 25, 1886.]