## A. F. FIELD v. D. C. MUNSTER.

### No. 1304.

**Conversion—Measure of Damages.**

Where property is wrongfully seized and sold under execution, and at such sale the owner becomes the purchaser at a less price than its market value, the measure of damages in an action by him for the conversion of the property is not its market value at the time of its seizure, with interest, but he is entitled to recover interest on the value of the property from the time of its seizure to the time of such sale, the amount paid by him at the sale, with interest thereon from that date, and whatever amount, if any, the property may have depreciated in value while it was withheld from him. Schooler v. Hutchins, 66 Texas, 324, distinguished.

APPEAL from Caldwell. Tried below before Hon. H. TEICHMULLER.

*L. J. & A. B. Storey,* for appellant.

*Thomas McNeal* and *Stringfellow & Coopwood,* for appellee.

KEY, ASSOCIATE JUSTICE.—On the 13th day of November, 1889, appellant, having in his hands as sheriff of Caldwell County, a valid execution against the Luling Manufacturing Company and J. H. Munster for the sum of $739.73, levied the same upon, seized and took possession of, a stock of merchandise of the value of $1293.36; and on the 27th day of the same month appellant sold said merchandise at public sale, and appellee, D. C. Munster, became the purchaser thereof for the sum of $725.

September 13, 1890, D. C. Munster instituted this suit against Field, alleging a conversion of the merchandise referred to, and praying judgment for its value; and on trial he recovered judgment for $1293.36, with six per cent. from November 13, 1889. Field has appealed.

In ruling on the pleadings, in charging the jury, and in refusing a special charge requested by appellant, the trial court held that, if the property belonged to appellee at the time of its seizure, he was entitled to recover its full market value, with interest; and that the fact that he had bought it in at the sheriff's sale and recovered possession of it for less than its market value, did not, in any wise; affect the measure of damages.

These rulings are assigned as error.

In the case of Schooler v. Hutchins, 66 Texas, 324, Hutchins had been appointed assignee in a statutory assignment; certain creditors of the assignors caused attachments to be issued and levied upon the assigned property; the property was sold under the attachments, and the assignee bought some of it. He afterwards brought suit as assignee against the sheriff who levied the attachments, and the sureties on his official bond, to recover the value of the property levied on, charging a conversion.

As bearing on the question now under consideration, and relied on by appellee in support of the ruling of the district judge in this case, we copy from the opinion in that case as follows:

"The petition contains all the averments necessary to entitle the assignee to recover for an illegal seizure and conversion of the property which the defendants caused to be taken under their writs of attachment, and subsequently sold as perishable property, under an order of court. That the assignee may have bought a part of the property which the defendants caused to be seized and sold by the sheriff under the order of the court, cannot affect either his right to recover or the measure of damages. His rights in these respects were fixed when the property was taken from his possession, and the defendants cannot be heard to assert that their liability or its measure can be made to depend on what subsequently occurred.

"The defendants illegally seized, or caused the goods to be seized, and, if the evidence is entitled to credence, held them for some time before they were sold, and during that time so dealt with them as to greatly depreciate them in value, and now claim that, as the assignee bought some of the goods at the sale, they should only be held responsible for such sum as he paid for them. To entertain such a view of the law would be to hold that the defendants, by their own acts, might cause the property to depreciate in value, and avoid responsibility for such depreciation by returning it to its true owner, who had elected to recover its value at the time it was taken from his possession.

"If A. should cause the property of B. to be seized and sold for the debt of C., and at such sale B. should become the purchaser of the property for a sum ever so much less than its real value, this certainly would not affect his right to recover from A. the value of his property at the time of seizure, even though when he recovered it back under the purchase it was as valuable as when first taken from him. This is not an action to recover the property with damages for its detention, but an action for its value based on the fact of conversion."

As reported, it does not appear exactly how the question in that case arose; and, in order to ascertain that fact, we have examined the original transcript in the Supreme Court; and the only assignment of error that touches the question, and evidently the one under consideration when the language above quoted was used, in so far as it has any bearing on this subject, reads thus: "The court erred in refusing to grant defendant's motion for a new trial........3d. Because the evidence shows that J. V. Hutchins, plaintiff herein, after he had accepted the assignment made to him by P. R. Turney & Co., purchased from said sheriff, at the sale of the attached property, a large amount of such attached property, and the jury should have placed on the goods so purchased by said plaintiff no greater value than the amount paid for them by said plaintiff at said sale."

In fact, the above quotation from the opinion indicates that the foregoing assignment was under consideration, because it is stated in said

quotation that, although the defendants in that case had illegally seized the property and caused it to greatly depreciate in value, they claimed that, as the plaintiff had bought some of the goods at the sheriff's sale, they should only be held responsible for such sum as he paid for them.

The court very properly declined to sustain that contention. Such a measure of damages would be manifestly unjust to the owner of the property. It would restore to him the money he had paid out, without interest, and the property wrongfully taken, not as it was when taken, but greatly diminished in value, without any compensation for such depreciation in value.

Therefore, while there are expressions in the opinion in that case that cover a wider range, and apply to and support appellee's contention on the question now before this court, they were not necessary to a decision of the question presented and decided, and are but the obiter dicta of the learned judge who wrote the opinion.

The case of Hart & Co. v. Blum, 76 Texas, 113, was decided by the Commission of Appeals and approved by the Supreme Court; and, in so far as it bears on the point here involved, it rests upon the dicta in Schooler v. Hutchins, supra. In neither case are any other authorities discussed or referred to.

In so far as the briefs of the parties, or our own investigations, have disclosed, these are the only cases bearing on the question that have ever been before our Supreme Court; and for the reasons stated, and as the weight of authority as well as sound principle does not sustain the utterances in those cases which tend to support the rulings under consideration, we do not think the question should be regarded as finally settled in this state, and feel constrained to decide the question as we think it should be decided.

The purpose of the law in awarding actual damages is to repair the wrong that has been done, to compensate for the injury inflicted, but not to impose a penalty. Any method that will afford the injured party more than just and reasonable compensation, is not the correct measure of actual damages, whether the injury be the result of a willful wrong or an honest mistake. Actual or compensatory damages are not dependent on nor graded by the intent with which the wrongful act is done; while, in many cases, intent is an important factor in measuring exemplary damages and in determining the extent of the plaintiff's injury and the amount of actual damage, there is no inflexible rule of law that limits the inquiry to the exact time that the tort was committed. Conditions arising thereafter, and which might reasonably be expected, may increase the extent of the original injury; while, on the other hand, entire or partial reparation may be made; and, in cases of conversion, the owner may voluntarily regain possession of his property before trial, or even before suit is brought.

Suppose the property of A. is converted on Monday, is restored and voluntarily accepted by him on Tuesday, in as good condition and worth as much as when converted, and suit is thereafter instituted to recover

damages for the conversion of the property, will it require a sum of money equal to the value of the property to compensate A. for the injury he has sustained? Certainly not. In such a case, compensation for the loss of the use of the property during the time it is withheld from the owner, and reimbursement for whatever sum, if any, he may pay out to recover the property, will, in the absence of proof of other damages, afford ample compensation for the injury done.

Take the case now in hand. The property levied on was worth $1293.36; it was held fourteen days and sold by the sheriff; except the fact that it sold at sheriff's sale for only $725, there is no evidence that it had depreciated in value; the plaintiff attended the sale and bought it in for $725. So, in two weeks after the property was taken, he voluntarily regained possession of it by paying out $725.

Under these facts, will it require $1293.36, and interest, to compensate the plaintiff for his actual loss? He has the property alleged to have been converted; apparently it is worth about as much as when converted; and, to regain it, he has been compelled to pay out only $725. Now, if the defendant be required to pay the plaintiff nearly double the amount it has cost him to regain his property, will he not be condemned, under the guise of actual damages, to pay the plaintiff several hundred dollars more than the testimony shows his loss to be?

With these remarks, we turn to an examination of the authorities bearing on the question. In treating the subject of conversion, Mr. Sutherland says: "If the case is such that the plaintiff can be fully compensated by a sum of money less than the full value of the property which has been converted, the recovery will be limited to the amount that will suffice for complete indemnity. The plaintiff will be confined to compensation commensurate with the actual injury." 3 Suth. on Damages, 527. And in the same volume, on page 528, he says: "If after the conversion of the property, it goes back into the possession of the plaintiff, and he accepts it, this will go in mitigation of damages, even though no agreement be shown on the part of the plaintiff that will receive it. So, if the property has gone to the plaintiff's use with his consent, expressed or implied, that fact may be shown in mitigation." And in vol. 1 of the same work, on page 239, he says: "Wherever the owner gets his property back after wrongful detention, the expense of procuring its return is the measure of damages, in the absence of special damages, and where the property itself has not been injured nor diminished in value. In other words, the wrongdoer is prima facie liable for the value of the property at the time he tortiously took it, or converted it, with interest; but if it has been returned and accepted by the owner, its value when returned, or if the owner has incurred expense to recover it, then its value, less such expense, will be deducted by way of mitigation from the amount which would otherwise be the measure of damages. Where one recovers his property again, which had been unlawfully taken from him, he is considered as having received it in mitigation

of damages, upon the principle that he has thereby received partial compensation for the injury suffered."

Another text writer says: "If the owner has recovered property taken from him by the wrong-doer, that fact will reduce the damages; but the owner is allowed compensation for his expenditure in recovering the property. Thus, where the plaintiff's property was seized and sold by the defendant, a sheriff, and was repurchased by the plaintiff from the one who bought it in at the sheriff's sale, it was held that the measure of damages was the amount paid to the re-purchase of the property." 1 Sedg. on Damages, sec. 58.

Discussing the same subject, Mr. Field, in his Law of Damages, sec. 110, says: "In an action for the conversion of property, the fact that the property has been returned to the plaintiff may always be shown in mitigation of damages; and, generally, where there is a wrongful taking and the property has been redelivered to the owner or party entitled to possession of the same, the measure of damages is the expenses necessarily incurred by reason of the tort, the value of the time required to recover it, the value of the use of the property, and the amount of injury thereto, if any."

The case of Dodson v. Cooper, 37 Kans., 346, is very similar to this case. In that case Dodson, as sheriff, seized and sold a stock of merchandise under attachments issued against one Blakely. Cooper claimed the property, and sued Dodson to recover damages for its conversion. Upon the trial, Dodson offered to prove that Cooper bought part of the goods levied upon, at the sheriff's sale, for less than their market value. This evidence was excluded, and the court instructed the jury that, if they found for Cooper, the measure of damages would be the value of the goods at the time they were taken by Dodson.

On appeal, the ruling on the evidence, and the charge on the measure of damages, were held to be erroneous. The opinion reviews the authorities and holds that the excluded evidence was admissible; and that, considering such evidence, the plaintiff was not entitled to recover the full value of the goods at the time of the conversion.

In Baldwin v. Porter, 12 Conn., 473, the defendant, as constable, had seized and sold on an execution against Birdsey Baldwin, certain sawlogs. The plaintiffs sued the constable to recover the value of the logs. The defendant offered to prove that when he sold the logs at public sale, Birdsey Baldwin, acting for the plaintiffs, bid them in and became the purchaser thereof. This evidence was rejected. On appeal, Church, J., who wrote the opinion of the court, treats the question with considerable elaboration, and, among other things, says: "That the value of the property converted is the general rule of damages, in an action of trover, is admitted. To this rule there are exceptions, and both the rule and the exceptions proceed upon the principle that the plaintiff ought to recover as much and no more damages than he has actually sustained, which commonly is the value of the property; and hence the general rule. No good reason, consistently with moral principle, can be sug-

gested, why greater damages should ever be recovered than have in truth been sustained, except in those cases where the law permits, by way of punitive justice, the recovery of vindictive damages." And, after citing and considering other cases in support of the opinion, it is said: "And the real state of the case is, that the defendant took the logs in question under color of legal process, and in the course of his proceedings the plaintiffs have been illegally subjected to a loss of fifty-six dollars and seventy cents, and no more. This sum, and the interest upon it, will indemnify them for the loss sustained; and this, and no more, they ought to recover.   We think a contrary doctrine, in cases like this, would, in most cases work great injustice.   A claimant of goods taken on execution for the debt of another generally attends at the place of sale, makes known his claim and forbids the sale.   Purchasers dare not, under such circumstances, interfere, or at least are unwilling to do so at any hazard, and cannot be induced to offer the real value for any such disputed article.   The owner, therefore, by his own act would be enabled to regain possession of his property for a sum merely nominal.   It would be an affront to the principles of justice to say, that, after having thus obtained his property, the owner should in addition recover its full value."

Baldwin v. Porter was referred to and reaffirmed in Curtis v. Ward, 20 Conn., 204, and Lazarus v. Ely, 45 Conn., 504, where it was held that, although property had been unlawfully converted, the tortfeasor had the right, in mitigation of damages, to show that it had, subsequent to the conversion, been seized and sold under valid process against the plaintiff, and the proceeds applied to the payment of a debt owing by him.

In Hunt v. Haskell, 24 Maine, 339, the Supreme Court of that State, in deciding the question now under consideration, say: "But it appears that the plaintiff attended the auction, and, through the intervention of a friend, regained possession of his goods by paying the auction price, and five dollars more to his friend; and it is not shown that, when so received, they were not in good order. This must be allowed to go in diminution of the damages which the plaintiff would otherwise be entitled to recover.   Whatever damages he sustained, over and above what was fairly due to the defendant, in regaining possession of his goods, he is entitled to have allowed him.   The five dollars paid to his friend for bidding off the goods; five dollars and thirty-one cents for auctioneer's fees; five dollars for his own time in endeavoring to regain possession of his goods, and six dollars, being the difference between the freight demanded and the amount tendered, with interest on these sums, making twenty-two dollars and fifty cents, the plaintiff must have judgment for. Murray v. Burling, 10 Johns., 172; Bank v. Leavitt, 17 Pick., 1.

"He cannot have judgment for the value of the goods, for he was never divested of his property in them.   Neither the acts of the defendant, nor the sale at auction, not being in market overt, there being none such in this country, as there is in England, could effect a change in the right of property.   The plaintiff, if his tender was sufficient, might have maintained an action of replevin for his goods, against the defendant, or

against a purchaser at the auction sale, as well as trover against the defendant; and the latter action is maintainable only upon the ground that the defendant had done, in reference to the goods, what was unauthorized by the law."

Still stronger language is used by the Supreme Court of Wisconsin, in Sprague v. Brown, 40 Wis., 620, where Lyon, J. says: "It will be borne in mind that the plaintiffs obtained the safe under their purchase from Kirkland, who bought it at the sheriffs' sale on his own account. Had they purchased it at such sale under protest, all of the authorities agree that they could still maintain this action, and that the measure of their damages would be the price they were compelled to pay for it. Sedgwick on Damages (6th ed.), 614; Ford v. Williams, 24 N. Y., 359; Murray v. Burling, 10 Johns., 172; Baker v. Freeman, 9 Wend., 36; Hurlburt v. Green, 41 Vt., 490; McInroy v. Dyer, 47 Pa. St., 118. It should be observed that, where the property is thus bid off by the true owner, probably he would not be allowed to recover more than its fair market value, although he should pay a greater sum to obtain possession thereof; and that he may recover any special damages, in addition, which he has suffered intermediate the conversion and return of such property. But it seems that such special damages should be stated in the complaint. Sedgwick, supra.

"The foregoing cases rest upon the propositions that in these actions damages are to be assessed upon equitable principles, and that the sum paid to obtain possession of the property wrongfully converted is a just and full compensation for the wrong suffered by the owner. It seems to us that the same principles should be applied to this case. Although the plaintiff did not bid off the safe at the sheriff's sale, yet they obtained possession of it by paying $118, and they do not allege and have not proved any special damages. We hold, therefore, that the latter sum is the true measure of damages, and the jury should have been so instructed.

"There is another probable reason why the plaintiffs should not be permitted to recover the full value of the safe. Mr. Sedgwick says: 'If the plaintiff recovers the value of the property, and the judgment is satisfied, there would seem to be no doubt that the title to the property should and does vest in the defendant, he having paid its value...... And the better opinion would appear to be, that if the judgment is not for the value of the property, or if it remain unpaid, the title is unaltered.' Page 620. If the law is here stated correctly (as undoubtedly it is), a judgment for the full value of the safe, and satisfaction thereof, might vest the title thereto in the defendant, and he might be driven to an action against the plaintiffs to recover possession of it, which would manifestly be unreasonable and unjust."

To the same effect are Tilton v. Fuller, 35 N. H., 226; Baker v. Freeman, 9 Wend., 36; Long v. Lamkin, 9 Cush., 361; McInroy v. Dyer, 47 Pa., 118.

In Brady v. Whitney, 24 Mich., 154, the plaintiff sold the property

that had been converted, to a third person; but, notwithstanding that fact, the trial court held that the plaintiff was entitled to recover the full value of the property. On appeal, the Supreme Court of that state, by Campbell, C. J., said: "We think, also, that the other ruling was incorrect. The general rule is, that a defendant in trover, against whom damages are given for the full value of the property converted, gets title to the property, either by the judgment itself or by its payment. As a matter of course, no one has a right to full damages unless he is in such a position that title will thus pass from him at the time of the trial and judgment. The utmost that a party can claim, who has transferred his title, would be damages analogous to those rendered where the property has been restored and accepted. These would be nominal damages only, unless there has been some special damages caused by the taking and detention."

On the general propositions, that just and reasonable compensation is the correct measure of actual damages, and that a restoration and acceptance of converted property, or the application of its proceeds to the plaintiff's use and benefit when legally seized and sold after conversion, may be considered in mitigation of damages, we refer to the following authorities: Moore, McKinney & Co. v. King, 4 Texas Civ. App., 397 (23 S. W., 484); Koyer v. White, 6 Texas Civ. App., 381 (25 S. W., 46); 15 Am. & Eng. Encycl. of Law, 688; Ewing v. Blunt, 20 Ala., 694; Reynolds v. Shuler, 5 Cow., 326; Pierce v. Benjamin, 14 Pick., 356; Yale v. Saunders, 16 Vt., 243; Doolittle v. McCullough, 7 Ohio St., 299; Bank v. Leavitt, 17 Pick., 1; Perry v. Chandler, 2 Cush., 237; Sherry v. Schuyler, 2 Hill, 204; Dailey v. Crowley, 5 Lans., 301; Van Arsdale v. Joiner, 44 Ga., 173; Bates v. Clark, 95 U. S., 204.

In so far as the question now under consideration is concerned, we are unable to see that it makes any difference whether the converted property be recaptured by the owner, voluntarily returned and accepted, or bought in by him at a sale.

The conditions upon which he is permitted to recover its full value are, that he was the sole owner of the property; that it was taken without his consent; and that it has not been restored to and accepted by him. If the testimony shows that either of these conditions are wanting, then he is not entitled to recover its full value. And any method by which he voluntarily reacquires the property must, it seems to us, be regarded as a restoration; and, in that sense, the restoration is just as complete whether he buys it from the tort feasor, pays him a given sum to release it, or accepts it from him when gratuitously tendered. In either case he regains possession of his property, and therefore it will not require its full value to recompense him for the loss he has sustained, unless it has cost him that much to regain it.

Nor is it correct, in actions for damages for conversion, where the owner has repurchased the property from the tort feasor, to treat the amount so paid as part of the purchase money paid by the plaintiff for his title to the property, and not as a sum expended in its recovery.

Such a suit is predicated upon the proposition that the plaintiff was the owner of the property when taken; and if he was not such owner, then, as to him, there was no conversion. If he asserts that he acquired any title by his purchase from the tort feasor, then he admits that he was not sole owner when the property was taken; and, if not then the sole owner, he cannot recover its full value. Necessarily, his title must antedate the taking; and, therefore, it cannot have its origin in any transaction subsequent thereto.

We have given this case mature and careful consideration; and, unless some item of special damage not indicated by the pleadings and evidence be shown, our conclusion is, that interest on the value of the property from the time of its seizure to the time it was sold, the amount paid by the plaintiff on his bid for the property, and interest on said amount from the time it was paid, and whatever amount, if any, the property may have depreciated in value while it was withheld from the plaintiff, is the correct measure of his damages; and that the District Court erred in holding otherwise. On all other questions raised by appellant we rule against him.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 30, 1895.

Writ of error refused.