**SCOTT et al. v. DOGGETT et ux.**

No. 5996.

Court of Civil Appeals of Texas. Amarillo.

Oct. 15, 1949.

Rehearing Denied Nov. 14, 1949.

McWhorter, Howard, Cobb & Gibson, Lubbock, Homer L. Pharr, Lubbock, for appellants.

James O. Cade, Lubbock, for appellees.

PITTS, Chief Justice.

On November 20, 1948, Berch Scott filed suit against C. H. Doggett and wife, Helen Doggett, for the sum of $1200 with interest and attorney fees added thereto, alleging that such sum was the balance due on a note executed on July 1, 1948, by Doggett and his wife, payable to Scott for the sum of $1800 with 7% interest thereon payable $200 per month, together with accrued interest thereon, for each consecutive month, beginning on August 1, 1948, and running through April 1, 1949, with 10% interest added thereto if the note be placed in the hands of an attorney for collection. According to the record the note does not contain an acceleration clause, but Scott contends there was an oral agreement between the parties that included the provisions of the acceleration clause in case of a default in the payment. The number of that suit on the trial court's docket is 16,320.

The record reveals that on the day the said suit was filed Scott also filed with the clerk of the trial court a proper bond and an affidavit for a writ of attachment, alleging the Doggetts had failed and refused to pay the installment of the note due on November 1, 1948, and declaring the entire balance due on the note. He further alleged that the Doggetts were about to dispose of their property with intent to defraud their creditors. A writ of attachment was issued and executed and the sheriff took possession of the most of a certain stock of groceries located in a store being

operated by the Doggetts at Shallowater in Lubbock County, Texas, and invoiced the said goods in his return duly made at values fixed by him that totaled $1257.50.

Thereafter C. H. Doggett filed suit against Berch Scott and his bondsmen for the writ of attachment, J. T. Scott and L. E. Baker, seeking damages by reason of conversion and for the wrongful and malicious attachment of his stock of groceries under the writ of attachment sued out previously and thereby damaging the credit and the good will of the business operated by himself and his wife. The number of that suit on the trial court's docket is 16,-342. Both suits having been filed in the same court, the trial court ordered them consolidated and tried them together on April 27, 1949. Before going to trial, all of the payments on the note having become due, C. H. Doggett and wife, Helen Doggett, who will hereafter be referred to as appellees, filed an admission of liability on the balance due on the note involved in this case and asked for the right to open and close in the trial of the case, which request was granted.

The case was tried to a jury which found upon special issues submitted to it that appellees did not deny liability on the note in question when the same was presented to them on November 3, 1948, by appellants for payment; that appellant, Berch Scott, at the time he sued out the writ of attachment, had no probable cause to believe appellees were about to dispose of their property for the purpose of defrauding their creditors; that the reasonable wholesale cash market value of the stock of groceries seized under the writ of attachment was $1500; that the reasonable market value of the good will of the grocery store operated by appellees immediately before the attachment was run was $1500 and that such was not worth anything immediately after the attachment was levied; that Berch Scott acted with malice in suing out the writ of attachment and causing the same to be levied upon appellees' stock of groceries, for which malicious acts the jury found Berch Scott liable to appellees in the sum of $4000. Upon such verdict the trial court rendered judgment for appellees for actual damages in the sum of $1500 for conversion of the stock of groceries, together with 6% interest thereon from the date of conversion to the date of judgment, which sum for interest amounted to $45, and an additional sum of $1500 as actual damages for destroying the good will of the said business, making a total sum of $3045 for actual damages, for which sum appellant, Berch Scott, is primarily liable to appellees, and his bondsmen, L. E. Baker and J. T. Scott, are secondarily liable to the extent of $2700, the amount of the attachment bond. The trial court further adjudged the sum of $4000 against appellant, Berch Scott, and in favor of appellees, as exemplary damages making a total of $7045 against which sum an offset of $1374.16 was adjudged favorable to Berch Scott and against appellees as principal, interest and attorney fees on the note in question, leaving the balance of the judgment $5670.84. Appellants, Berch Scott and his bondsmen, have perfected their appeal to this court and have executed a supersedeas bond in the sum of $7500.

Appellants complain in their first, second and third points that there were no pleadings and no evidence to support a judgment based upon the measure of damages found by the jury in answer to special issue number 2 and that the issue did not inquire about a legal measure of damages in a suit such as this. The three points are jointly presented. The trial court made the following inquiry in special issue number 2:

"From a preponderance of the evidence, what do you find was the reasonable wholesale cash market value of the stock of groceries seized under the writ of attachment on November 20, 1948?"

In connection with appellants' charge that there were no pleadings to support the measure of damages inquired about in the foregoing special issue, we find from the record that appellees pleaded that appellant, Berch Scott, knowingly, falsely, maliciously and without probable cause, ran an attachment on their stock of groceries and converted the said stock of groceries to his own use at a time when appellees were solvent as merchants, had a good business,

a good credit and a good reputation. They further pleaded that "the said stock of merchandise, consisting of all sorts of groceries, was of the market value of $2000." According to the record appellants leveled no exceptions to such a pleading and made no complaint about it being insufficient either before or during the trial. They made no complaint about the submission of special issue number 2 to the jury and did not level any objections to the submission of such issue, or any other issue, until after the issues had been answered against them by the jury. When appellees offered evidence in support of the measure of damages inquired about in the said issue, no objection was made by appellants to the admissibility of such evidence on the grounds that there were no pleadings to support such an issue or that such pleadings were insufficient to support such an issue. The record does not justify appellants' charge that "there is no pleading to support such measure of damage." Appellees pleaded that the market value of the goods was $2000. If appellants considered the pleading insufficient, it was their duty, under the Texas Rules of Civil Procedure, to complain about such either by a special exception leveled at the pleading or by an objection made in writing before the charge was read to the jury to the submission of such issue and pointing out distinctly to the trial court the grounds for such objection. Since appellants failed to do either and since they failed to complain about the insufficiency of the pleadings when evidence was offered in support of the said issue, they waived any right to make complaints about the matter and will not now be heard to say that such issue was not raised by the pleadings. Rules 67, 272 and 274; Christopherson v. Whittlesey, Tex.Civ.App., 197 S.W.2d 384; Traders & General Ins. Co. v. Collins, Tex. Civ.App., 179 S.W.2d 525; Morgan v. Young, Tex.Civ.App., 203 S.W.2d 837; Galveston Theatres, Inc., v. Larsen, Tex. Civ.App., 124 S.W.2d 936.

■ The record does not support appellants' charge that "there is no proof to support such measure of damage" as that inquired about in special issue number 2. C. H. Doggett testified that the reasonable wholesale market value of the groceries taken by appellants was $2000 but it could be a little more or a little less. James Harvey, branch manager for J. M. Radford Wholesale Grocery, testified that he had sold appellees groceries amounting to approximately $2000 per month wholesale price during the months of September and October of 1948. There is evidence to the effect that Doggetts bought merchandise from wholesale dealers other than J. M. Radford Wholesale Grocery. The evidence heretofore referred to was not controverted and the only objection made by appellant to the admissibility of such evidence at the time it was offered was that made to Doggett's testimony only on the grounds that some showing should be made as to what the stock of groceries consisted of but the writ of attachment return of the sheriff had been previously admitted in evidence showing the said stock of goods itemized and invoiced at a total value of $1257.50 fixed apparently in some manner by the sheriff. The jury placed a wholesale value of $1500 on the stock of goods and it is our opinion that the evidence supports the jury finding. In support of our holding we cite the case of McClelland v. Fallon, 74 Tex. 236, 12 S.W. 60.

■ We are not in accord with appellants in their contention that the measure of damages submitted by the trial court in special issue number 2 was not the legal measure of damages in such cases. It will be remembered that appellants made no complaint about the submission of the said issue until after it had been answered against them by the jury. Therefore, under the foregoing rules cited, they should not now be heard to complain about the matter. But, be that as it may, in the cases of Schoolherr v. Hutchins, 66 Tex. 324, 1 S. W. 266, Douglass v. Coffin, Tex.Sup., 1 S. W. 270; and Barber v. Hutchins, 66 Tex. 319, 1 S.W. 275, the Supreme Court held as far back as 1886 that in an action for the wrongful taking of goods the true measure of damages is the actual market value of such goods at the time of the taking, together with interest thereon from thence until the rendition of the judgment. Such rule was followed in Willis v. Whitsitt, 67

Tex. 673, 4 S.W. 253; Barnes v. Darby, 18 Tex.Civ.App. 468, 44 S.W. 1029; Weaver v. Goodman, Tex.Civ.App., 51 S.W. 860; Fisher v. Scherer, Tex.Civ.App., 169 S.W. 1133, and the said rule has since been consistently followed. The case of Schoolherr v. Hutchins, supra, is cited in support of the rule laid down in the case of Gossett v. Jones, Tex.Civ.App., 123 S.W.2d 724, cited by appellants in support of their contention. The Gossett case lays down the following rule:

"The measure of damages for the wrongful attachment of merchandise is the value of the goods in bulk, or in convenient lots at the place at which they were seized on the day of the conversion, with interest on that value, and not the value they would bring if sold at retail, nor the value a purchaser would pay if compelled to take the entire stock together."

It is a matter of common knowledge that the wholesale value of goods is the cost price in bulk or in convenient lots sold and delivered to the retailer, while the retail value of such goods is the open market value of the same sold or offered for sale at a profit, item by item where the said stock of goods is located. The wholesale value of the goods is therefore usually less than the retail value of the same goods. We find no inconsistencies in the rule fixing the measure of the damages in the Gossett case and the measure of damages fixed by the trial court in submitting the issue of damages to the jury. It is our opinion that the trial court correctly submitted the legal measure of damages in the issue about which appellants complain but that appellants should not be heard to complain about the matter now in any event because of the rules and authorities heretofore cited.

Since the legal measure of damages was properly submitted, since there were pleadings and evidence to support the submission of special issue number 2 and since appellants made no complaint about the insufficiency of the pleadings until after the said issue was answered against them, their first, second, and third points are overruled.

Appellants present their fourth, fifth, sixth and seventh points together, charging that appellees' pleadings were insufficient and improperly drawn to support the submission of special issue number 3; that there was no evidence to support a finding made in the said issue; and that there was no evidence to support the submission of special issue number 4.

Appellants did not except to the pleadings about which they complain and no objections or complaints were made about the submission of the said special issues until after the issues were answered against them by the jury. Under the authorities previously herein cited, appellants waived their rights to complain about insufficient or improper pleadings and should not now be heard to complain about such. Appellees pleaded that their reputation, credit and the good will of their business were of a great pecuniary value of $5000 to them and that the conduct of appellant, Berch Scott, in attaching their stock of groceries ruined such for appellees to their total damage of $7000, of which sum $2000 was damage done by reason of the conversion of the said stock of goods. In answer to special issue number 3 the jury found the reasonable cash market value of the good will of appellees' business immediately before the attachment on November 20, 1948, was $1500 and in answer to special issue number 4, it found that such was of no value immediately after the attachment was levied on the said date.

In the case of Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557, 106 A.L.R. 1299, by the Commission of Appeals approved by the Supreme Court, Commissioner Hickman held that good will is property that may be sold or damaged; that there is no principle of law making any distinction between it and other property with respect to the right of ownership thereof or to recover damages therefor if it is injured or destroyed; that issues submitted for the recovery of damages of this nature are for injuries done to property; that good will, although intangible, is an integral part of the business just the same as the physical assets; and that

the rule for measuring such damages is the same as that for measuring damages to any other property. The trial court followed such rules in submitting issues 3 and 4 in this case.

◼ In considering the sufficiency of the evidence we find from the record that C. H. Doggett testified without objections being made that he had been in the grocery business fifteen years at various places and that the value of his business over and above tangible assets was $5000 before the goods were attached. He supported such testimony with further evidence as to the volume of business he was doing before the goods were attached. James Harvey testified that he was branch manager of J. M. Radford Wholesale Grocery, had been with Radford people seventeen years, and that he had a fair knowledge of the value of a grocery business. He further testified, in effect, that he sold goods monthly to appellees and was acquainted with the volume of their business. Based upon the volume of business appellees were doing, he testified that in his opinion the good will of the business was worth from $4000 to $6000 before the goods were attached. In connection with the loss of good will sustained by appellees, C. H. Doggett testified, in effect, that he tried to restock and continue in business after his goods had been taken under the writ of attachment but made no profits because 75% of his customers did not come back and his business dropped off until he was forced to close out his business. His testimony was not contradicted but it was supported by the volume of daily business the evidence shows he did after his goods had been attached. The evidence shows the volume of his business was considerably reduced immediately after the attachment was levied on November 20, 1948, and that it was further reduced during the months of December and January following, during which time he was losing money in an effort to keep open, for which reason he testified he was forced to close the business on January 31, 1949. It is our opinion that there is sufficient evidence to support the findings of the jury in answer to special issues 3 and 4. For the reasons stated appellants' fourth, fifth, sixth and seventh points are overruled.

◼ In their eighth and ninth points appellants contend that a double recovery was awarded appellees because the award of damages made by the jury in answer to special issue number 6 was the ultimate fact issue on the question of damages and that it covered the damages awarded in special issues numbers 2 and 3. It is our opinion that such a contention is not tenable under the record. Appellants attack the trial court's judgment because it awarded to appellees $1500, together with 6% interest which amounted to $45, for conversion, $1500 for destroying the good will of the business, making a total of $3045 actual damages and in addition thereto awarded the sum of $4000 as exemplary damages against appellant, Berch Scott, alone. The trial court did just that and the jury findings supported by the record justified such action by the trial court. Appellants do not charge that the damages were excessive or that the evidence does not support the exemplary damages. Nevertheless, there is ample evidence to support the jury's finding of such damages. Appellees pleaded such damages without any complaint from appellants until after the verdict of the jury had been returned. The actual damages were separated from the exemplary damages in the pleadings, under the evidence and under the submission of the issues. We have already discussed the submission of issues for actual damages by reason of conversion and the destruction of the good will of the business in the submission of issues 2, 3 and 4 and the answers of the jury thereto. Following the submission of those issues the trial court submitted issues 5 and 6, together with instructions as follows:

"Special Issue No. 5

"Do you find from a preponderance of the evidence that Berch Scott, in suing out the writ of attachment levied on November 20, 1948, acted with malice in suing out such writ and in causing the same to be levied upon the property of C. H. Doggett and wife Helen Doggett?

"Answer 'He did act with malice,' or 'He did not act with malice.'

"Answer: He did act with Malice.

"In connection with the above and foregoing Special Issue No. 5, you are instructed that the word 'malice,' as contained in such Issue, means the intentional doing of a wrongful act to another without legal justification or excuse.

"If, in answer to Special Issue No. 5, you have answered that Berch Scott's acts in suing out the writ of attachment were malicious, then you will please answer Special Issue No. 6.

"Special Issue No. 6

"What amount of money, if any, do you find from a preponderance of the evidence, if paid now, would recompense C. H. Doggett and wife Helen Doggett for the malicious acts, if you have found such acts were malicious, of the said Berch Scott?

"Answer in 'Dollars' and 'Cents.'

"Answer: $4,000.00"

Appellants made no objections to the submission of the said issues, together with the instructions, at the time such were submitted. The term "exemplary damages" was not used in the submission of the issues about such but such a term had been used in the pleadings read to the jury. The record does not disclose any confusion in the minds of the jury. We find no confusion in the submission of the issues on damages and no basis for the contentions made in this matter. Appellants' points to the contrary are therefore overruled.

In point 10 appellant charges that, in the submission of special issue number 3, the trial court assumed that the business of appellees had a good will prior to the levy of the attachment. For the reasons previously stated appellants should not now be heard to complain about such a matter since they did not object to the submission of the issues until after they were answered against them. The statement of facts is replete with evidence concerning the good will of the business and its value before the attachment was levied. Such evidence was not controverted and no evidence was offered that no such good will existed at such time. The evidence conclusively supported the presumption that the good will of the business existed prior to the levy of the attachment. City of Austin v. Johnson, Tex.Civ.App., 195 S.W.2d 222, and other authorities there cited. Appellant's tenth point is overruled.

Appellants charge in their eleventh point that the trial court erred in entering judgment against appellants, L. E. Baker and J. T. Scott, for the sum of $2700 because they were only bondsmen for appellant, Berch Scott, for the writ of attachment and they were therefore liable only for damages in the sum of $1500 by reason of conversion of the stock of goods, if for anything. The amount of the said bond was $2700. Under the record appellees were injured and actually damaged by reason of conversion of the property in question and the destruction of the good will of their business as a result of the wrongful issuance and execution of the writ of attachment. Appellants, L. E. Baker and J. T. Scott, indemnified appellees against such wrongful injuries and damages when they signed the bond as sureties. The total actual damages incurred by appellees by reason of the wrongful attachment of their goods was $3045. The trial court properly rendered judgment secondarily against appellants, L. E. Baker and J. T. Scott, for the sum of $2700. Their point to the contrary is therefore overruled.

In their twelfth and thirteenth points appellants charge that the trial court erred in overruling their motions for judgment non obstante veredicto and to disregard certain findings of the jury. They do not submit any statement, argument or authorities in support of the said points for the reason, as contended by them, that such have been covered by discussions of other assignments. We overrule such points for the reason that we, too, have covered such matters in the discussion of other assignments.

In their fourteenth point appellants charge that the trial court erred in awarding appellees 6% interest on the

$1500 awarded for conversion, amounting to the sum of $45, from the date of conversion to the date of judgment without any pleadings to support such award. Appellees pleaded damages by reason of conversion. Appellants waived their right to complain about such pleadings for the reasons heretofore repeatedly stated. However, the numerous authorities heretofore cited in support of the rule on the measure of damages in such cases, including the case of Gossett v. Jones, supra, cited by appellants, makes such interest a part of the damages for conversion. We have heretofore stated the rule governing such a matter. Therefore, under the authorities cited by appellants themselves and many other authorities, there is no basis for the complaint made here by appellants.

Appellants charge next in their fifteenth point that the trial court erred in entering judgment against them for 6% interest on the sum of $7045 when the credit of the balance on the note amounted to $1374.16, which sum was deducted by an offset from the total judgment of $7045 leaving the sum of $5670.84 on which sum legal interest could be added. The record does not support such a charge. The trial court's judgment awarded interest on the "entire judgment of $7045 or any unpaid part thereof." It thereafter granted the offset of $1374.16 against the entire judgment of $7045 leaving a balance of $5670.84, which sum may draw legal interest until paid. The credit of $1374.16 constituted a payment on the entire amount of $7045. Appellants' fifteenth point is therefore overruled.

Appellants complain in their sixteenth point that the trial court erred in its failure to dispose of any claim appellee, Helen Doggett, has against appellants. Helen Doggett has been referred to as an appellee herein but she was actually a party only as a defendant in the suit filed against her and her husband by Berch Scott on the note, bearing number 16,320 on the trial court's docket. Her husband, C. H. Doggett, alone filed cause number 16,342 against appellants. Appellees admitted liability of the balance due on the note, leaving any community interest Helen Doggett may have in the litigation here contested wholly in the name of her husband, C. H. Doggett. Any claims she may have against appellants is a community claim in her husband's name as the sole party plaintiff in the contested suit and such has been disposed of by the trial court's judgment. Appellants' sixteenth point is therefore overruled.

After a careful examination of the record and the briefs filed we find no reversible error. Appellants' points are therefore overruled and the judgment of the trial court is affirmed.