## THOS. PIGGOTT v. SCHRAM & Co.

### (Case No. 5531.)

1. UNCERTAINTY — ATTACHMENT — ALLEGATIONS. — In a suit on a sworn account for the sum of $3,038.30, with interest on $3,015.56, the petition alleged that defendant refused to pay plaintiffs' debt, to their damage $3,450, and prayed for a writ of attachment against defendant's property, sufficient to satisfy their debt, interest and cost of suit, which they averred

would amount to $3,500. · The affidavit for attachment alleged that the facts set forth in the petition were true, and that the defendant was justly indebted to plaintiffs in the sum of $3,038.30, with interest on $3,015.56. *Held*, that there was no uncertainty or contradiction as to the amount of indebtedness claimed; the allegation of damages was not to be construed as an averment of the amount of the indebtedness, especially where the debt was expressly stated and itemized. The attachment did not purport to be sued out for plaintiffs' damages, but merely for the debt.

2. ATTACHMENT — FORECLOSURE.— A construction of articles 160 and 180 of the Revised Statutes shows clearly that the same rule applicable to mortgages and other like liens applies to the foreclosure of attachment liens, and that the right to decree a foreclosure and sale of the property attached for the *interest* and *costs* accruing up to the date of the judgment is clear and unquestionable.

3. ATTACHMENT — ASSIGNMENT — CREDITORS — INTENT.— An assignment of property was made for the benefit of creditors and the property put in the hands of the assignee. One of the creditors sued out a writ of attachment a few minutes before the deed of assignment was registered, but it was not executed until a few minutes after such registry. The only evidence offered to prove fraud was the mere fact of the assignment having been made, and some testimony tending to show that the debtor was influenced to make the assignment by the expectation that the attachment was about to be sued out. *Held:*

(1) That the assignment law does not recognize or regard the intent of a debtor who makes an assignment. If the assignment, honestly made, is sufficient to convey the property to the assignee, and does convey it, a creditor cannot attach the property thus conveyed. An assignment is to be regarded in law as conclusively not intended to defraud creditors in the sense of the attachment law, as applied between creditors of a common debtor, where the debtor transfers his property for their benefit.

(2) Evidence as to the manner of managing the assigned property while it was in the hands of the assignee, as tending to show a fraudulent intention on the part of the debtor, was irrelevant.

(3) The statute provides that the assignee shall forthwith, after the execution and delivery of the deed of assignment, cause the same to be recorded, and that he shall execute the required bond, but it does not make the validity of the assignment, and its completeness to pass the title to the property, depend upon the act of registering the deed. This statute was intended for the benefit of creditors as a class, and must be construed so as to give them the intended benefits; the law is not to be construed so as to put it in the power of a single creditor to defeat its designs by issuing an attachment before a *bona fide* assignee can reach the clerk's office and file the deed of assignment.

(4) The object of requiring promptness in recording the instrument is to give notice of its contents to all whom it may concern; but as between those who are creditors at the time when the deed of assignment was made and the trust accepted and acted upon, the recording cannot be taken as a test of the efficiency of the deed. Recording the deed on the day the assignee received it is certainly a compliance with the most technical construction of the requirements of the law.

(5) The question of fraudulent intent as applied to assignments is fully set forth in Blum *v.* Welborne, 58 Tex., 157, and Keating *v.* Vaughn, 61 Tex., 521.

APPEAL from Kinney. Tried below before the Hon. T. M. Paschal.

Suit by appellees in the district court of Kinney county on the 28th day of February, 1882, on a sworn account, for the sum of $3,038.30, with interest on $3,015.56, at eight per cent., from January 1, 1882. The petition alleged that the defendant had refused to pay plaintiffs' debt, to their damage $3,450. The petition then alleged that the defendant was about to dispose of his property with intent to defraud his creditors, and that thereby plaintiffs would probably lose their debt, wherefore they prayed for a writ of attachment against the property of the defendant sufficient to satisfy their debt, interest, and cost of suit, which they averred would amount to the sum of $3,500.

The affidavit for attachment was as follows: " That the facts set forth in the foregoing petition are true; that the defendant, Thos. Piggott, is justly indebted to the plaintiffs in the sum of $3,038.30, with interest on $3,015.56, at the rate of eight per cent. per annum, from the 1st day of January, 1882; that the defendant is about to dispose of his property with intent to defraud his creditors; that the attachment is not sued out for the purpose of injuring or harassing the defendant, and that plaintiffs will probably lose their debt unless such attachment is issued." The writ of attachment was issued 28th February, 1882, and the return states that it was received same day at 3 o'clock forty-five minutes, and executed same day at 4 o'clock. On the 9th of March, 1882, the officers returned the writ, stating that W. W. Lambert had made oath and given bond as claimant of the property levied on, and that such property had been delivered to such claimant.

The defendant filed an answer of general denial, and pleaded in reconvention that the attachment was wrongfully and also maliciously sued out, and without probable cause, and asked actual and special damages for the wrongful, and exemplary damages for the malicious suing out of the writ.

Defendant filed a motion to quash the attachment, which motion was overruled.

On the 3d day of July, 1884, the defendant filed an amended motion to quash the writ of attachment, and therein renewed the ground of his former motion, which amended motion was overruled by the court, to which ruling the defendant excepted.

On the 5th day of March, 1885, the case came on for trial on the petition and third amended original answer, and the trial resulted in a verdict and judgment for the plaintiffs for the sum of $3,812.93,

with interest thereon from date of judgment, March 10, 1885, with foreclosure of the attachment lien.

*P. H. Ward* and *L. C. Grothaus,* for appellant, on uncertainty, cited: Espey *v.* Heidenheimer, 58 Tex., 662; Marshall *v.* Alley, 25 Tex., 342; Waples on Attach., 420; Cross *v.* Richardson, 2 Martin (N. S.), 323; Joiner *v.* Perkins, 59 Tex., 301; Evans *v.* Tucker, 59 Tex., 250; Brown *v.* Martin, 19 Tex., 343; Drake on Attach. (6th ed.), §§ 96, 96*a;* Wright *v.* Snedicor, 46 Ala., 92.

On the assignment, they cited: Drake on Attachment (ed. 1885), §§ 223, 245; Waples on Attach. and Garn., 159, 160; Blum *v.* Welborne, 58 Tex., 157; 2 Wil. Con. R., § 370; Keating *v.* Vaughn, 61 Tex., 523.

· No briefs on file for appellees.

WALKER, P. J. COM. APP.— The first assigned error relates to the overruling of defendant's motions to quash the attachment because of the alleged uncertainty and contradiction in respect to the amount of the indebtedness claimed by plaintiffs, as exhibited in the statements thereof in the petition, the affidavit for attachment and the recitals in the writ itself.

The record does not bear the construction which appellant urges. There is neither contradiction nor confusion in the statements referred to. The plaintiffs' sworn account is an exhibit attached to and made a part of the petition. The account is for items running through the year 1881 and into the year 1882. The aggregate amount is $3,038.30. The plaintiff does not claim interest on any part of it previous to January 1, 1882. At that date the account amounted to $3,015.56, interest at eight per cent. on which he claims from that date. The subsequent items of the account accruing in 1882 make the total or aggregate sum above stated, viz., $3,038.30. The plaintiffs' petition, after thus stating the account, alleges that they have sustained damage by defendant's failure and refusal to pay the debt in the sum of $3,450. This allegation of damage is not properly to be construed as an averment of the amount of the indebtedness, especially where the specific facts constituting the amount of the plaintiffs' debt are affirmatively and expressly stated and itemized. The attachment does not purport to be sued out for the plaintiffs' damages, as contradistinguished from their debt, as such. All the proceedings harmonize with and are consistent with this statement of the plaintiffs' claim as shown in the petition, affi-

davit and writ of attachment, and the court did not err in overruling the defendant's motions to quash the attachment.

*Second assignment of error:* "The writ of attachment having been issued for $3,038.30 only, the court erred in foreclosing the attachment lien, and ordering so much of the attached property to be sold as will satisfy the judgment, viz., $3,812.93, with interest thereon from date of judgment, said decree of foreclosure and order of sale being void for the excess over $3,038.30 and the costs of suit."

The attachment law authorizes the seizure of "so much of the property of the defendant as shall be sufficient to satisfy the demand of the plaintiff and the probable costs of the suit." Art. 160, R. S. The "demand" of the plaintiffs was the principal and accrued interest, together with the interest accruing on their account up to judgment, and the costs of the suit. Art. 180, Revised Statutes, provides that if the plaintiff recover in the suit the attachment lien shall be foreclosed as in case of other liens. Art. 181, Revised Statutes, provides that when personal property has been levied on the judgment shall also be against the defendant and his sureties on his replevy bond for the amount of the judgment, interest and costs, or for the value of the property replevied and interest, according to the terms of such replevy bond.

It is too plain for controversy that the same rule applicable to mortgages and other like liens applies to the foreclosure of attachment liens; and that the right to decree a foreclosure and sale of the property attached for the interest and costs accruing up to the date of the judgment is clear and unquestionable.

The appellant assigns numerous grounds of error, mainly relating to the charges given by the court to the jury. The case was tried by the court under a view which seems to have been entertained by the court, that, if the plaintiffs' attachment was executed on the property before the deed of assignment was filed for record in the county clerk's office, notwithstanding it may have been executed and delivered to the assignee before that period of time, that the rights of an attaching creditor would prevail against the assignment if the assignor was guilty of a fraudulent intent to defraud his creditors in making the assignment, and that evidence was admissible to establish such fraud, and, if so found, that the deed of assignment would be deemed fraudulent and void as to creditors.

If we have properly interpreted the view entertained by the court, as developed in a series of propositions contained in quite a lengthy charge, we conceive that it is founded in a misconception of the law applicable to this case. It is an erroneous idea, we think, to con-

found a fraudulent intent to defraud creditors with the question or issue presented under the facts. The deed of assignment bore date on the 27th of February, 1882. The assignee, Lambert, accepted the trust on the night of the 27th of February, 1882, or on the 28th of February, 1882. He was in possession of the goods as assignee when the writ of attachment was executed. He proceeded to qualify under the law by giving bond as assignee, and acted as such for a month, when he turned the property back to the assignor, as he testified, under the direction of one Hugo, one of the principal creditors of the assignor, and who he understood represented all the creditors except the plaintiffs and another firm who had attached the property. The deed of assignment was, it seems from the sheriff's return and the clerk's certificate of registry, filed for record in the county clerk's office at 3:50 P. M., a few minutes after the time when the writ of attachment was issued, and a few minutes before it was executed. The evidence as to acts tending to show that the defendant was about to transfer his property to defraud his creditors referred alone to the deed of transfer or assignment to Lambert for the benefit of his creditors. The evidence tended to show, also, that he was influenced to do so from immediate expectation that the plaintiffs were about to sue out an attachment against him.

Under facts like these, the assignment law does not recognize or regard the intent of the debtor who sees proper to make an assignment of his property. It is sufficient that he does in fact do so — that he shall actually make a conveyance to an assignee for the benefit of his creditors which shall be sufficient to convey the property, and if he shall have in fact done so, a creditor cannot attach the property thus conveyed. The statute (General Laws, Acts of 1879, p. 58), regulating assignments for the benefit of creditors, provides that the assignee shall forthwith, after the execution and delivery of the deed of assignment, cause the same to be recorded as provided by that statute, and that he shall execute the bond required by the same law; but the statute does not make the validity of the assignment, and its completeness to pass the title to the property, depend upon the act of filing the deed for registry. Section 1 of the same statute provides that the deed of assignment "shall be proved or acknowledged and certified and recorded in the same manner as provided by law in conveyances of real estate or other property." The provisions of the statute are to be construed so far beneficially to the creditors, for whose benefit its provisions are intended, as to give effect to such advantages and benefits as its enactments are intended to confer on them as a class of persons; and

so as not to be defeated by a construction that would place it in the power of a single creditor or a few creditors to frustrate them. If a failing debtor, intending to transfer and assign his property for the benefit of his creditors, has made a valid transfer and assignment to an assignee, or is in the act of doing so, it would be in fraud of the law of assignments to allow a creditor to issue an attachment before it was practicable, perhaps, for the assignee to reach the county clerk's office and cause the deed to be filed for record or to be recorded. The transactions involved cannot be instantly nor simultaneously consummated; and that construction would be unreasonable and destructive of the equal and just operation of the law which would thus require the act of recording of the deed of assignment to determine its vitality and power to invest the assignee with the title to the property as against attaching creditors. The statute exacts no such test; the object of requiring promptness in recording the instrument is to give notice of its contents to all whom it may concern; but as between those who are creditors at the time when the deed of assignment shall have been made, the trust accepted, and being openly and notoriously acted upon by the assignee, the recording of it cannot be taken as a test of the efficiency of the deed; it is valid to convey the property before it shall have been recorded. Recording the instrument as soon as it was done in this case — on the day when the assignee probably received it,— would at all events seem to be a substantial compliance with even the most technical and stringent construction of the requirements of the law.

On the question of the fraudulent intent to defeat, delay or defraud creditors, as applied to this assignment, the case of Blum v. Welborne, 58 Tex., 157, need only be referred to without comment. The opinion in that case expounds with sufficient fullness the true doctrine for the construction of the assignment act, without further remark on the subject; and see, also, Keating v. Vaughn, 61 Tex., 521.

Under the view taken by us of the essential issues in the case and the rules of law applicable to them, we do not perceive the relevancy, in behalf of the plaintiffs, of the evidence mentioned in the second bill of exceptions. The deed of assignment to Lambert did not tend to show that the defendant was about to transfer his property to defraud his creditors, under any view of the pleadings which now occurs to us. If the deed did effect a transfer of the property, the law deemed it valid for the purpose, whether intended to be fraudulent in its consequences or not. See Blum v. Welborne, *supra.*

An assignment is therefore to be regarded, in law, as conclusively not intended to defraud creditors in the sense of the attachment law, as applied between creditors of a common debtor, where the debtor is about to transfer or has transferred his property for their benefit. The manner of managing the property which was assigned and transferred whilst in the hands of the assignee, as tending to show a fraudulent intention on the part of the defendant, was equally irrelevant, as evidence offered by the plaintiffs.

It is not deemed necessary to follow the numerous grounds of error assigned in regard to the charge of the court, as the case will be tried again under aspects of the law applicable to the questions in the case so different from those which were submitted on the trial. We shall therefore pretermit further discussion of them.

We are of opinion that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted June 26, 1885.]