## PATTY-JOINER & EUBANK COMPANY v. R. B. CUMMINS.

### No. 896. Decided June 11, 1900.

1. **Assignment for Creditors—State Insolvent Law—Effect of National Bankrupt Act.**

In so far as an insolvent law of a State provides for a release by the creditors it is suspended by a bankrupt law of the United States; but if the assignment convey all the debtor's property subject to the payment of his debts for the equal benefit of all his creditors who may accept under it, it is otherwise valid, except as against proceedings seasonably taken under the Bankrupt Act. (P. 604.)

2. **Same—Assignment Exacting Release—Nonaccepting Creditor—Garnishment.**

Though a general assignment under the State law was made for the benefit of such creditors only as released the assignor from further liability, it was not invalid as a transfer of the property, except upon proceedings against the assignor under the Bankrupt Act, and a nonaccepting creditor could not subject to his garnishment the proceeds of the property in the hands of the assignee. (Pp. 602-604.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Hunt County.

*F. B. Dillard,* for appellants.—The national bankruptcy act, approved July 1, 1898, suspended the operation of the statutory assignment law of the State of Texas, and it will remain so suspended as long as said act is in effect, and R. B. Cummins, assignee of said W. S. Bedford & Son, made under a statutory assignment after said act went into effect, could not claim any protection by virtue of said assignment, but he held the property, or the proceeds thereof, conveyed to him by said assignment for the benefit of Bedford & Son, and Patty-Joiner & Eubank Co. acquired a valid lien on the money or property so in the hands of said assignee at the time of service of the writ of garnishment, by virtue of said writ.

Section 3 (4) of the bankruptcy act of 1898 makes the making of a general assignment for the benefit of creditors an act of bankruptcy. This provision is not found in any former bankruptcy act. It was held by the court construing former acts, that a general assignment in effect hindered, delayed, and defrauded creditors, and that it was therefore an act of bankruptcy. But the provision of the present act forbids the making of a general assignment either under the common law or by

statute, and is in effect a declaration by Congress that general assignments are contrary to the spirit and purpose of the bankruptcy act. The history of the enactment shows that the commercial interests of the country demanded of Congress that it enact a uniform law on the subject of bankruptcy as provided by the Constitution of the United States, and thus simplify the laws affecting the wholesale trade. It was in response to this demand that Congress enacted the bankrupt law, and it would seem that the provision making a general assignment an act of bankruptcy and thereby in effect forbidding it, was a part of the general scheme and purpose to make the laws on the subject of bankruptcy uniform throughout the United States, and to remedy the evil growing out of the rapid changes and ineffectiveness in the laws of the different States.

The assignment made by Bedford & Son to Cummins was a statutory and not a common law assignment. It provided that it was made for the benefit of those creditors only who would accept under it and release the makers; it stated on its face that it was made under the statutes of the State of Texas, and that the makers were insolvent, a condition necessary for one to take advantage of our statutory assignment law. Hudson v. Elevator Co., 79 Texas, 406. The provisions of the statutes were intended and attempted to be carried out by it, and under the authority of Schoolher v. Hutchins, 66 Texas, 324, this intention alone makes it a statutory assignment. It is thought unnecessary therefore to discuss the question as to whether or not the right to make a common law assignment was superseded by the passage of the bankruptcy act; it is sufficient to say that every authority consulted by counsel, in which it was held under the old bankruptcy act that the right to make a general assignment was not superseded by the pasage of the bankrupt act, including the case of Meyer v. Hellman, 91 Texas, 496, quoted by the Court of Civil Appeals, was based on a common law assignment, or at least an assignment which was without the ear marks of a statutory assignment. Counsel has found no case under the old or new act where an assignment which provided that it was made for the benefit of those creditors only who would accept under it and release the debtor has been held not to be superseded by the passage of the bankrupt act. This assignment could not have been made at common law, but the right to make it for the benefit of accepting creditors only is solely by virtue of our statute. The argument and authorities cited by the Court of Civil Appeals in reference to this particular question are therefore not applicable.

The Court of Civil Appeals in its opinion held, on the authority of Keating v. Vaughn, 61 Texas, 518, that our State assignment law is not an insolvent law. Strictly speaking, this is true. An insolvent law as counsel understands it is one which takes all a debtor's property for the benefit of all his creditors and releases the debtor, without the consent of the creditor, and this kind of law would impair the obligation of contracts and would be in contravention of the Constitution of the United

States. 2 Am. and Eng. Enc. of Law, p. 175, and authorities cited. But a State may pass a law on the subject of insolvency, and this evidently is the kind of law referred to in the last section of the bankrupt act of 1898, which provides that "Proceedings commenced under State insolvency laws before the passage of this act shall not be affected by it." If this is not true this provision is senseless. Our statutory assignment law has every requisite of an insolvent law, as defined by Judge Adams. In re Sievers, 91 Fed. Rep., 366.

Counsel submits that the sections of the bankrupt act of 1898 above discussed show that Congress intended by the provisions of the act itself to supersede State assignment laws and to inaugurate a national system to cover the whole ground and sufficient for the needs of all the people. It is not reasonable to presume that Congress inaugurated this new system, simplified its provisions and the practice under it, and brought it near to the people, by requiring the officers to reside in the districts represented by them, and that meetings of creditors should be held at the county site of the bankrupt's residence to give insolvents or their creditors a cumulative remedy. It seems to counsel that the conclusion that Congress intended the bankrupt act to supersede State laws for the administration of estates of insolvents is inevitable.

The Constitution of the United States provides that Congress shall make uniform laws on the subject of bankruptcy. Sec. 8. It is elementary that a Federal system and a State system which have practically the same scope and purpose, which act upon the same parties and cover the same general ground, can not both stand at the same time. There is an inevitable conflict between the Federal and the State law, both statutory, and the Federal law, authorized by the Constitution of the United States, must survive and become the supreme law of the land, while the State law must be suspended.

A suspended law can have no force while still dormant, and no person can acquire any rights under it nor claim protection therefrom. The assignee takes no title as against creditors by the deed of assignment. He is a mere naked bailee for the creditors without any lawful authority to the possession of the bankrupt's estate, and the property in his possession is subject to garnishment. Counsel submits that the statutory assignment law of the State of Texas was superseded by the passage of the national bankruptcy act of 1898, and that the property of Bedford & Son in the hands of R. B. Cummins, garnishee, is subject to the garnishment in favor of Patty-Joiner & Eubank Co. Authorities under Act of 1898: Mfg. Co. v. Hamilton, 51 N. E. Rep., 529; In re Smith, 92 Fed. Rep., 135; In re Sievers, 91 Fed. Rep., 366; In re Curtis, 91 Fed. Rep., 741; In re Bruss-Ritter Co., 90 Fed. Rep., 651; In re Etheridge Fur. Co., 92 Fed. Rep., 330. Authorities under the old law: Miller on Constitution of U. S., 616; 1 Kent's Com., 690, note D; Sturges v. Crowninshield, 4 Wheat., 122, leading case; Martin v. Berry, 37 Cal., 208; Griswold v. Pratt, 9 Met., 16; In re Eames, 2 Story, 322; In re Reynolds, 8 R. I., 485; Chamberlain v. Perkins, 51 N. H., 336; Commonwealth v.

O'Hara, 6 Phila., 402; Tobin v. Trump, 7 Phila., 123; Van Nostrand v. Carr, 30 Md., 128.

*G. O. Green* and *H. D. Wood,* for appellee.   No briefs for appellee were on file.

GAINES, CHIEF JUSTICE.—This case comes to us upon certified questions.   The statement and questions as certified are as follows:

"The above entitled cause is an appeal from a judgment of the County Court of Hunt County.

"On February 2, 1899, W. S. Bedford & Son executed a general assignment conveying all their property subject to execution to R. B. Cummins, for the benefit of all their creditors who would agree to accept under the same and release them.   The assignment was in the usual form, and was a statutory assignment as provided by the statutes of the State of Texas.   Attached to the assignment was a list of the creditors and a schedule of the assets of the assignors.   The assignee accepted the trust and proceeded to administer the property.   Patty-Joiner & Eubank Company, a creditor of the assignors, did not accept under the assignment, but sued and obtained a judgment against W. S. Bedford & Son, and on March 9, 1899, pending the suit, sued out a writ of garnishment against R. B. Cummins, the assignee of W. S. Bedford & Son. The assignee answered the writ of garnishment, denying that he was indebted to or had any effects in his hands belonging to W. S. Bedford & Son, or that he knew of any person so indebted or in possession of effects.   Patty-Joiner & Eubank Company controverted the answer, alleging the making of the assignment and that the garnishee had more than sufficient funds, proceeds of the assigned property, to pay their debt, and further alleging that the national bankruptcy act was in force at the time the assignment was made, and contending that the passage of the act suspended the statutory assignment law of the State of Texas, and that R. B. Cummins, the garnishee, who was the assignee under the assignment, was liable under the garnishment for the funds that were in his hands, proceeds of the assigned property, to the extent of the judgment obtained by the Patty-Joiner & Eubank Company against the said W. S. Bedford & Son.   On the trial, it was proved that the garnishee had property and money, the proceeds of said assigned property, in his hands which would be subject to garnishment if it should be held that the assignment was invalid.   The court below held that the passage of the bankrupt act did not supend the State assignment law so as to render the assignment invalid, and that it would only have the effect to set aside the assignment upon the institution of bankruptcy proceedings against the assignors, and rendered judgment discharging the garnishee. This court affirmed the judgment of the court below.

"Pending a motion for rehearing, this court, desiring the instruction of the honorable Supreme Court for the proper decision of an issue of law arising upon the record, it is ordered that the following questions

be certified to the Supreme Court of Texas in accordance with article 1043 of the Revised Statutes, to wit:

"1. Was the State assignment law of Texas suspended by the passage and going into effect of the national bankruptcy act? and if so, is the money in the hands of the assignee Cummins subject to the garnishment of the Patty-Joiner & Eubank Company, the creditor of the assignors, W. S. Bedford & Son?

"2. By reason of the facts stated, was the assignment invalid?"

But for the fact that the assignors in the deed of assignment in question availed themselves of the privilege conferred by that provision of our assignment law which authorized them to exact discharges of the accepting creditors, provided they should receive from the assigned estate as much as one-third of their respective debts (Revised Statutes, article 73), there would be no difficulty in determining the question. The assignment being of all the debtor's property and being for the equal benefit of all the creditors of the assignors, would undoubtedly have been good as a common law conveyance, even if it should be held that the effect of the passage of the United States bankrupt act of 1898 was to wholly suspend the operation of our statutes which provide for general assignments by insolvent debtors.

In Mayer v. Hellman, 91 U. S., 496, it was held that such an assignment under the laws of Ohio was good, even as against an assignee in bankruptcy, when executed six months before proceedings in bankruptcy were taken against the debtor; and that decision would be conclusive of the question certified but for the fact that the law of Ohio did not provide for the discharge of the assignors. That case arose under the bankrupt law of 1867, and while there is a difference between that act and the now existing law, that difference is immaterial in so far as it affects the question before us. The present law expressly declares the making of a general assignment for the benefit of creditors an act of bankruptcy. It was an act of bankruptcy under the former statute as held by the courts (Boese v. King, 108 U. S., 379), there being, however, no express declaration to that effect in the act itself. Under the former law, proceeding to have a debtor who has made a general assignment declared a bankrupt had to be executed within six months. The period is reduced to four months by the present act.

If, then, the assignment under consideration was good at common law, it is a good assignment in this proceeding, and was from its inception good for all purposes except against proceedings in bankruptcy instituted under the bankrupt act of 1898 within four months from the day of its execution. The only doubtful feature of the instrument is the provision which exacts releases, and the question is, does that make the assignment void at common law? There is a conflict of authority upon the question, and, so far as we have been able to discover, there has been no authoritative decision by this court upon the point. The accepted rule in England seems to be, that, if the assignment conveys all the debtor's property, to exact a release as a condition of participating

in its benefits does not make it void. King v. Watson, 3 Price, 6; Janes v. Whitbread, 11 Com. B., 406; Jackson v. Lomas, 4 Term, 166. The rule seems to us a logical deduction from that other rule of the common law that a debtor has the absolute right to prefer his creditors and to appropriate all his property to pay one or more of them to the exclusion of all others, provided, that in no case more property be applied to the payment of a debt than is reasonably sufficient to satisfy it.

The failing debtor may also appropriate any or all his property to the securing of one or more of his creditors, provided the surplus be left subject to legal process in behalf of those who are unsecured. Since the debtor may directly appropriate his property to satisfy or secure any one or more of his debts, leaving others unsatisfied and unsecured, we fail to see how a creditor is injured by an assignment which exacts releases from those who accept under it. If the assignor could have preferred those who may see fit to accept by transferring his property to satisfy or secure their debts without making any provision whatever for his other creditors, how can the creditor who declines to accept such a deed of assignment complain, when the assignor may accomplish the same result by a mortgage in which the beneficiaries are expressly named? If it be urged that it is rigorous and unjust to a creditor to force him to release the debtor as a condition of his participation in the proceeds of the assigned estate, the answer is that he is not compelled to accept, and that, if he declines to do so, he is in no worse position than if the debtor had directly applied the property to the payment or the securing of the debts of those who may accept. That they are required to release does not affect him injuriously. It rather inures to his benefit. In so far as debts are discharged by releases, the volume of the indebtedness of the assignor is diminished to the extent of the debts so released; and this is clearly to the advantage of the remaining creditors, since it increases their chance of securing their claims from the future acquisitions of the assignor.

But we may go further. That a bankrupt law of the United States does not necessarily render an assignment made under a State insolvent law invalid for every purpose, is established by the decision of the Supreme Court of the United States in the case of Boese v. King, 108 U. S., 379. In that case, while the bankrupt act of 1867 was in force, an assignment was made in New Jersey under the statute of that State which provided for the discharge of the assignor from the debts of all accepting creditors. Certain creditors of the assignor who did not accept under the assignment procured a judgment in the State of New York against him, and an execution thereon having been returned unsatisfied, a receiver of the property of the execution debtors was appointed. The receiver having obtained authority from the court to sue the assignees, brought suit against them to test the validity of the assignment and to subject certain property of the debtor in the latter State to the payment of the judgment. It was held that the making of the assignment was an act of bankruptcy; that the instrument was sub-

ject to be attacked and avoided by proper proceedings in the bankrupt court at any time within six months after it was executed, but that it was otherwise a valid conveyance of the property, although it might be that the provisions of the New Jersey statute for the distribution of the proceeds of the assigned property among and the discharge of the accepting creditors were not enforceable by reason of the bankrupt act. In their opinion, the court say: "If it should be assumed, for the purposes of this case, that the statute of New Jersey was, as to each and all of its provisions, suspended when the bankrupt act of 1867 was passed, it does not follow that the assignment by Locke was ineffectual for every purpose. Certainly, that instrument was sufficient to pass the title from Locke to his assignees. It was good as between them, at least until Locke, in some appropriate mode or by some proper proceedings, manifested a right to have it set aside or canceled upon the ground of a mutual mistake in supposing that the local statute of 1846 was inoperative. And in the absence of proceedings in the bankruptcy court impeaching the assignment, and so long as Locke did not object, the assignees had authority to sell the property and distribute the proceeds among all the creditors, disregarding so much of the deed of assignment as required the assignees, in the distribution of the proceeds, to conform to the local statute. The assignment was not void as between the debtor and the assignees simply because it provided for the distribution of the proceeds of the property in pursuance of a statute, none of the provisions of which, it is claimed, were then in force."

Four of the judges dissented from the conclusion of the majority in that case, but the effect of the bankrupt act upon a State insolvent law is a Federal question, and therefore the decision of the court has a controlling effect upon us. The effect of the ruling is that, in so far at least as an insolvent law of a State provides for a release by the creditors, it is suspended by a bankrupt law of the United States, but that if the assignment convey all the debtor's property subject to the payment of his debts for the equal benefit of all his creditors who may accept under it, it is otherwise valid, except as against proceedings seasonably taken under the bankrupt act.

This answers both questions.