## STAR v. JOHNSON et al.

### No. 11087.

Court of Civil Appeals of Texas. Dallas. Oct. 31, 1931.

Rehearing Denied Nov. 28, 1931.

William Andress, Jr., and Renfro, Ledbetter & McCombs, all of Dallas, for appellant.

C. Huggins, of Sherman, for appellees.

### LOONEY, J.

The question for decision is whether the Assignment for Creditors Act, title 12, R. S. 1925 (articles 261–274), was suspended by the National Bankruptcy Law (11 USCA), and arose as follows: Appellees, judgment creditors of the Dallas Show Case & Manufacturing Company, a corporation, caused a writ of garnishment to be served on Arthur Star, its assignee, under a general assignment for the benefit of creditors. The garnishee answered, denying that he was personally amenable to the writ, but alleged that on March 13, 1931, the Dallas Show Case & Manufacturing Company assigned to him all its assets for the benefit of creditors, that he took possession of said assets, converted same into cash, to wit, the sum of $582.63, which was in his possession at the time the writ was served. He denied that the judgment debtor owned this money, but that same belonged to him, as assignee for the benefit of creditors, and was being held by him in trust for such purpose, hence the fund was not subject to garnishment at the suit of appellees. He therefore prayed for discharge with an allowance of $30 for costs and attorney's fee. Judgment went against appellant in the justice court on his answer; the case was appealed to the county court, and submitted on an agreed statement, which included the salient facts set out above, the transcript of the justice court record, and the answer of garnishee, which was not contested.

The court concluded, as a matter of law, that the Assignment for Creditors Act was suspended by the National Bankruptcy Law, that title to the assets of the corporation did not pass to appellant by the assignment, hence the proceeds thereof were held by him as agent for assignor, and were garnishable at the suit of appellees. The questions discussed are properly presented for consideration.

We think the construction given the Assignment for Creditors Act, in its relation to the Bankruptcy Law of Congress, by our Supreme Court in Patty-Joiner v. Cummins, 93 Tex. 598, 57 S. W. 566, announced the doctrine that is decisive of this controversy. The court, answering certified questions, held that the provision of the assignment statute requiring the creditor to release any part of his claim was suspended by the Bankruptcy Act, but as the assignment under consideration conveyed the debtor's property for the equal benefit of all accepting creditors, it was otherwise valid, except as against bankruptcy proceedings taken within four months. The court also held that the assignee was not subject to garnishment at the suit of a nonconsenting creditor.

In the case of Haijek v. Luck, 96 Tex. 517, 519, 74 S. W. 305, the Supreme Court had occasion to restate its holding in the Patty-Joiner-Cummins Case, as follows: "The case of Patty-Joiner & Eubank Co. v. Cummins, 93 Tex. 598, 57 S. W. 566, referred to in the certificate, determines two questions: First, that an assignment made under the assignment law of this state which does not exact releases, though subject to be set aside by proceedings in bankruptcy seasonably instituted, was not otherwise void; and, second, that even such an assignment, which is made for the benefit of such creditors only as should accept under it and release the assignor from further liability, operated a transfer of the property, and that it was not subject in the hands of the assignee to a writ of garnishment by a nonaccepting creditor. * * *"

In the Patty-Joiner-Cummins Case, the Supreme Court cited Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377, and Boese v. King, 108 U. S. 379, 2 S. Ct. 765, 27 L. Ed. 760. In the Mayer-Hellman Case, the court held, opinion by Judge Field, that an assignment by an insolvent debtor of his property to trustees for the equal and common benefit of all his creditors was not fraudulent, and, when executed six months before proceedings in bankruptcy taken against the debtor (under the act of 1867), was not assailable by the assignee in bankruptcy subsequently appointed. In Boese v. King, the court held, opinion by Judge Harlan, that, under the Bankruptcy Act of 1867 (14 Stat. 517), an assignment of one's property, to be equally distributed among his creditors under a state statute, was an act of bankruptcy for which, under proper proceedings, he could be adjudged a bankrupt, and the property wrested from his assignees for administration in the bankruptcy court, but except as against such proceedings, an assignment for the benefit of creditors without intent to hinder, delay, or defraud creditors, was valid, at least for the purpose of securing an equal distribution of the estate among creditors, and that the assignees could hold the proceeds of such property, deposited by them in another state, against a receiver of the debtor's property appointed in that state. Judge Holmes, in Randolph v. Scruggs, 190 U. S. 533, 537, 23 S. Ct. 710, 712, 47 L. Ed. 1170, said: "The assignment was not illegal. It was permitted by the law of the state, and cannot be taken to have been prohibited by the bankruptcy law absolutely in every event, whether proceedings were instituted or not. Re Sievers [D. C.] 91 F. 366; Re Romanow [D. C.] 92 F. 510. It had no general fraudulent intent. It was voidable only in case bankruptcy proceedings should be begun. At the time when it was made the institution of such proceedings was uncertain. It seems to us that it

would be a hard and subtle construction to say, as seems to have been thought in Bartlett v. Bramhall, 3 Gray [Mass.] 257, 260, that when they were instituted they not only avoided the assignment, but made it illegal by relation back to its date, when, if they had not been started, it would have remained perfectly good." The same doctrine was announced in Stellwagen v. Clum, 245 U. S. 612, 615, 38 S. Ct. 215, 62 L. Ed. 507, 511.

The opinions of these great judges who spoke for the Supreme Court in the cases just mentioned, wherein they held that state laws, in all material respects the same as ours, were not suspended by the National Bankruptcy Act, ought to be considered ample federal authority for the holding of our Supreme Court in the Patty-Joiner-Cummins Case.

The soundness of the rule announced by our Supreme Court, in the Patty-Joiner-Cummins Case, remained unchallenged until the Texarkana Court held differently in Johnson v. Chapman Milling Co. (Tex. Civ. App.) 37 S. W.(2d) 776. The facts involved in the Johnson-Chapman Case are analogous to the facts in the Patty-Joiner-Cummins Case, as well as to the facts involved in the case at bar; in other words, the facts of each of these cases invoke the same rule of decision. The Texarkana court based its decision on International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 110, 73 L. Ed. 318, as controlling authority.

While we have the highest respect for the opinions of the able and experienced judges who compose the Texarkana court, we are constrained, after careful consideration, to the view that their decision is incorrect. The Pinkus Case announced no new rule of law; on the contrary, it is entirely consistent with the line of decisions to which it properly belongs. The court was there dealing with a case that arose under a statute of Arkansas, held at the outset to be an insolvency law. The court said: "The Arkansas statute is an insolvency law. It is so designated in its title (Acts of Arkansas 1897) and in the revision. * * * The Supreme Court of the state treats it as such." In the course of the discussion, the court distinguished the case from Boese v. King, one of the cases cited as an authority by our Supreme Court in Patty-Joiner-Cummins, and on this phase said: "His [Pinkus] purpose was to delay plaintiff in error and to secure full releases as provided by the statute. The state court [173 Ark. 316, 292 S. W. 996] did not treat the proceedings under the state law as a transfer of insolvent's property for unconditional distribution as was done in Boese v. King. On the contrary, the decree was the same as if the Bankruptcy Act had not been passed, and the [State] court held that, without giving any effect to the statute, the insolvent by what was done in the chancery court could compel the same distribution and obtain for himself the same advantages as were contemplated by the insolvency law. We are of opinion that the proceedings in the chancery court cannot be given that effect. The enforcement of state insolvency systems, whether held to be in pursuance of statutory provisions or otherwise, would necessarily conflict with the national purpose to have uniform laws on the subject of bankruptcies throughout the United States."

That the Assignment for Creditors Act of this state is not an insolvency law was held by our Supreme Court in Keating v. Vaughn, 61 Tex. 518, 524, in an opinion by Judge Stayton, who said: "The statute in question is in no sense an insolvent law, providing for the discharge of a debtor by a compliance with its terms without the consent of the creditor; but is a statute which, for the better protection of creditors, prescribes a mode for the administration of the estates of insolvents under assignments made by the debtors themselves, which would be good at common law, unaided by the statute, and, like any other trust, could be enforced in a court of equity in the absence of a statute providing a mode of administration."

It is very evident that there are two distinct lines of decisions—one involving cases arising under general insolvent statutes, as in the Pinkus Case, and the other involving cases arising under statutes permitting general assignments for the benefit of creditors, as in Meyer v. Hellman, Boese v. King, Randolph v. Scruggs, and Stellwagen v. Clum, supra. These cases are easily distinguished, as was shown in Re Sievers (D. C.) 91 F. 366, 368, in the following language: "Concerning these different contentions, it appears to me that there is a substantial difference between a proceeding under a general insolvency statute and one under a statute permitting general assignments. The one administers upon the estate of an insolvent as a proceeding in the courts, derives its potency from the law, winds up the estate judicially, and discharges the debtor. Such is essentially a proceeding in bankruptcy, and such is undoubtedly superseded by the act of congress in question. * * * The other derives its potency, not from the law, but from the contract or deed of the debtor, is administered under and according to the provisions of the deed, supplemented only by salutary legislative safeguards, and does not result in a discharge of the debtor from his obligations. This method of proceeding is not superseded by the act of congress in question. Mayer v. Hellman, 91 U. S. 496 [23 L. Ed. 377]; Boese v. King, 108 U. S. 379, 2 S. Ct. 765 [27 L. Ed. 760]; Reed v. McIntyre, 98 U. S. 507 [25 L. Ed. 171]."

Again the Supreme Court, in Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 469, 75 L. Ed. 1060, recognizing the two lines of deci-

sions, cited and classified the Pinkus Case as belonging to the group based upon state insolvency statutes, in effect, bankruptcy proceedings, that were suspended by the National Bankruptcy Act, and all proceedings thereunder held void; the court said: "The appellees, however, insist that the purpose and function of the creditors' bill was a general disposition and distribution of the debtor's property; that it was a winding up proceeding pursuant to state law, and was therefore superseded by the bankruptcy. They invoke the settled rule that state insolvency laws which are tantamount to bankruptcy because they provide for an administration of the debtor's assets and a winding up of his affairs similar to that provided by the national act, are suspended while the latter remains in force, and proceedings under them are utterly null and void whether commenced within four months of the filing of a petition in bankruptcy or before. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377; Hanover Nat. Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113; Miller v. New Orleans Acid & Fertilizer Co., 211 U. S. 496, 29 S. Ct. 176, 53 L. Ed. 300; Stellwagen v. Clum, 245 U. S. 605, 38 S. Ct. 215, 62 L. Ed. 507; International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318. It was pointed out in Stellwagen v. Clum, supra, that state laws which provide for sale and distribution of a debtor's property may not amount to insolvency laws; and it was there held that such laws, if not inconsistent with the administration of the bankruptcy act, are available to litigants. Appellees must therefore show that the statutory action in the state court is, in fact, an insolvency proceeding."

In the light of these authorities, we are of opinion that the Texas Assignment for Creditors Act was not suspended by the National Bankruptcy Law, except as to the provision that provides for the discharge of claims of consenting creditors who are paid as much as one-third thereof, and the assignment under consideration being valid and enforceable in other respects, the trial court erred in holding to the contrary.

The assignment was not attacked for fraud in fact, nor was any evidence offered to that effect, but, even if so, the statute provides that fraud of parties thereto will not affect the validity of an assignment made thereunder. See article 267, R. S. 1925, and Burnham v. Logan, 88 Tex. 1, 29 S. W. 1067. The most that could be said is that the assignment was a potential fraud upon creditors of the Dallas Show Case & Manufacturing Company, because made an act of bankruptcy. See clause (4), par. (a), § 21, of title 11, Bankruptcy, USCA, pp. 173, 174. However, unless and until such an assignment is seasonably (within four months) attacked and an adjudication in bankruptcy is made, it will be considered and treated to all intents and purposes as valid and enforceable. Same authority, note 81, p. 212.

We do not think the fund in the hands of appellant was garnishable at the suit of appellees. Our courts have repeatedly held that a nonconsenting creditor, in a general assignment for creditors, will not be permitted to defeat the purpose of the assignment by fixing liens, on the property assigned, under attachment process or otherwise, nor subject the same to sale for the payment of his claim; that property thus assigned is withdrawn from the reach of attachment or other processes at the suit of a nonconsenting creditor. See Piggott v. Schram, 64 Tex. 447; Schoolher v. Hutchins, 66 Tex. 324, 1 S. W. 266; McKee v. Coffin, 66 Tex. 304, 1 S. W. 276; Burnham v. Logan, 88 Tex. 1, 9, 29 S. W. 1067, 1070; Patty-Joiner v. Cummins, 93 Tex. 598, 57 S. W. 566.

Article 271 of the assignment statute provides that: "Any creditor not consenting to the assignment may garnishe the assignee for any excess of such estate remaining in his hands after the payment to the consenting creditors the amount of their debts and the costs and expenses of executing the assignment." Appellees did not proceed under this statute, nor did they contest the answer of appellant; on the contrary, they admitted that the allegations of fact in the answer were true. The case was appealed without a statement of facts, but the court made and filed findings, to the effect that the amount of the unsecured indebtedness of the judgment debtor at the time of the assignment was approximately $11,000; that appellant, as assignee, took possession of all assets and properties of the assignor, converted same into cash, and when garnished had on hand for the benefit of creditors the sum of $582.63. In view of this situation, no presumption can be indulged that an excess will remain after the purposes of the assignment are executed. We are of the opinion, therefore, that the judgment of the court below should be reversed and here rendered, that appellees take nothing against appellant, and that he have judgment against them for $30 attorney's fee and expenses incurred in answering the garnishment.

Reversed and rendered.