No. 23706.

IN THE MATTER OF THE ASSIGNMENT OF CARLSON'S FOR MUSIC, INC., A COLORADO CORPORATION, INSOLVENT, UNION TRUST COMPANY, ASSIGNEE *v.* JOSEPH B. GOULD, INDIVIDUALLY, AND DOING BUSINESS AS ENTERPRISE BUILDING.
(489 P.2d 1038)

Decided October 12, 1971.     Rehearing denied November 8, 1971.

A. E. Radinsky, for plaintiff in error.

Creamer & Creamer, George Louis Creamer, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This appeal is brought to review the judgment of the Denver District Court dismissing a contempt citation against defendant Gould. The chief point of error, however, is directed to the trial court's ruling that the Colorado "Assignment-Benefit of Creditors" statute (C.R.S. 1963, 11-1-1 *et seq.*) is unconstitutional. We reverse.

The chronology of this action in the district court is as follows: On August 29, 1966 assignor Carlson's for Music, Inc. made a voluntary assignment of its assets and the Union Trust Company was appointed as assignee. Inventory of the assets and a bond in the amount of $6,566 were filed in the Denver district court on September 6, 1966 in civil action No. B-95417, In The Matter of the Assignment of Carlson's For Music, Inc., a Colorado Corporation. According to an affidavit filed with the court on September 20, 1966, notice to creditors dated September 7, 1966 was deposited in the United States

mail on September 9, 1966. Among the creditors notified was Enterprise Building, c/o Joseph P. Gould.

On October 24, 1966, a motion for citation directed to Gould to show cause why he should not be adjudged in contempt of court was filed with the court. Grounds for the motion were the allegations that Gould had seized and retained a portion of the assets of Carlson's for Music subsequent to the assigment and in violation of pertinent portions of the statute. A citation for contempt was issued, and upon Gould's motion to quash, the district court without a hearing on the merits ruled the statute involved to be unconstitutional.

The district court apparently based its conclusion of unconstitutionality upon the holding of *International Shoe Company v. Pinkus*, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929). *Pinkus* involved a ruling by the United States Supreme Court that the Arkansas law governing the distribution of property of insolvents was invalid because it operated within that field pre-empted by the Federal Bankruptcy Law.

The holding in that case has been distinguished by more recent decisions of the United States Supreme Court holding that, while state insolvency laws are invalid, states may, in fact, enact statutes providing for the voluntary assignment of debts for the benefit of creditors. For example, in the case of *Johnson v. Star*, 287 U.S. 527, 53 S.Ct. 265, 77 L.Ed. 473 (1933), the Court addressed the question of whether the Texas assignment for the benefit of creditors statute was repugnant to federal laws:

"In the case at bar the court of civil appeals for the fifth district observed the differences between state insolvency laws and those merely regulating voluntary assignments for the benefit of creditors and, following the rule established by the Texas supreme court that non-consenting creditors may not seize property covered by such assignments, held that the fund in the hands of the assignee was not garnishable. And the supreme court, approving that decision and disapproving

one to the contrary announced by the court of civil appeals for the sixth district, * * * held that 'the questions at issue have been definitely settled * * * *'.

"Accepting as we do that court's construction of the provisions in question, we are of the opinion that they are not repugnant to the Bankruptcy Act."

The rationale behind upholding the right of the various states to enact so-called "assignment for the benefit of creditors" statutes has perhaps been best stated as follows:

"But for the fact that the assignors in the deed of assignment in question availed themselves of the privilege conferred by that provision of our assignment law which authorized them to exact discharges of the accepting creditors, provided they should receive from the assigned estate as much as one third of their respective debts * * * there would be no difficulty in determining the question. The assignment, being of all the debtor's property, and being for the equal benefit of all the creditors of the assignors, would undoubtedly have been good as a common-law conveyance, even if it should be held that the effect of the passage of the United States bankrupt act of 1898 was to wholly suspend the operation of our statutes which provide for general assignments by insolvent debtors. * * *" *Patty-Joiner & Eubank Co. v. Cummins*, 93 Tex. 598, 57 S.W. 566 (1900).

However, the scope of such statutes has been limited. The following language would appear to hold that "assignment for benefit of creditors" statutes are not repugnant to federal law, but sections providing for the mandatory discharge of the assignor are:

*"There is nothing in the assignment, the application of the circuit court to take jurisdiction, or its order thereon, to suggest that the discharge of the assignor was contemplated.* The provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors apply whether the assignor is solvent or insolvent. *They do not prevent creditors from bringing*

*action against the debtor or require those seeking to participate in the distribution of the estate to stipulate for his discharge.* And, quite in harmony with the purposes of the federal Act, the provisions of c. 128 that are regulatory of such voluntary assignments serve to protect creditors against each other and go to assure equality of distribution unaffected by any requirement or condition in respect of discharge." *Pobreslo v. Joseph M. Boyd Company,* 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed 469 (1933). (Emphasis added.) *See also Johnson v. Star, supra.*

█ Therefore we must conclude that the provisions in the Colorado statute providing for discharge of the assignor (Sections 11-1-27 and 11-1-34 to 50 inclusive) have been suspended by the Federal Bankruptcy Act. *See Johnson v. Star; Pobreslo v. Joseph M. Boyd Co.,* both *supra.*

██ This does not mean, however, that the remaining portions of our statute are also invalid. The sections are severable without doing violence to the state's sovereign right to provide laws for distressed debtors. The Colorado statutory scheme provides perfectly acceptable provisions by which debtors may voluntarily assign their assets for the benefit of their creditors. By a long series of decisions, extending from *Salsbury v. Ellison,* 7 Colo. 167, 2 P. 906 (1883), to *International Drilling, Inc. v. Ferguson Trucking Co.,* 141 Colo. 250, 347 P.2d 773 (1959), this court has recognized assignments for the benefit of creditors, both under statutory and common law, to be a valuable and necessary adjunct to the credit laws of this state. Thus, while compliance with the statutory provisions will not allow the debtor to be discharged from his debts — for this the Federal Bankruptcy laws must be used — still, such voluntary assignments are available.

In reaching a similar result, the Texas Court of Civil Appeals, in an opinion cited with approval by the Supreme Court, in *Johnson v. Star, supra,* spoke as follows:

"That the Assignment for Creditors Act of this state is not an insolvency law was held [previously] * * * 'The statute in question is in no sense an insolvent law, providing for the discharge of a debtor by a compliance with its terms without the consent of the creditor; but is a statute which, for the better protection of creditors, prescribes a mode for the administration of the estates of insolvents under assignments made by the debtors themselves, which would be good at common law, unaided by the statute, and, like any other trust, could be enforced in a court of equity in the absence of a statute providing a mode of administration."

\* \* \* \*

In the light of these authorities, we are of opinion that the *Texas Assignment for Creditors Act was not suspended by the National Bankruptcy Law, except as to the provision that provide for the discharge of claims of consenting creditors who are paid as much as one-third thereof,* and the assignment under consideration being valid and enforceable in other respects, the trial court erred in holding to the contrary. * * *" *Star v. Johnson,* 44 S.W.2d 429 (Tex. 1931). (Emphasis added.) *Quoting from Keating v. Vaughn,* 61 Tex. 518 (1884).

■ In agreement with the logic of the Texas Court of Appeals, we conclude that the Denver District Court was in error when it held that the entire statute of "Assignment — Benefit of Creditors" was unconstitutional by reason of the Federal preemption of the Bankruptcy Law, when in fact only those sections relating to the discharge of assignors or debtors are repugnant to the Federal Law and preempted by it.

The question then arises whether, on remand, Gould can be held for contempt — given the validity of the statute. Gould alleges that inasmuch as he has never been made a party to any action, nor entered a general appearance, therefore the district court has no jurisdiction over him such that he may be cited for contempt. The Citation for Contempt previously issued and then

quashed by the lower court stated that Gould had been ordered by the court to do certain things, and was being cited for failure to comply with such order. Although it does not appear from the face of the citation, we assume that Gould was being cited for failure to return to the assignee that property which had been seized from Carlson's for Music after notice of the assignment. We note that under the provisions of the "Assignment — Benefit of Creditors" statute, all property *after* assignment is under the jurisdiction of the court:

*"In all assignments for the benefit of creditors made in this state, the district court in and for the county in which such deed of assignment is recorded as now provided by law, shall have full power and complete jurisdiction over all the property, real, personal and mixed, conveyed by such assignment from the date of the making of the same.* Such court may make any order or orders in reference to any part or all of the property embraced in said estate and the disposition thereof by the assignee as to such court may seem just and equitable, and all such orders shall be legal and binding upon the assignor, the assignee and creditors of said estate whether any notice be given to the application therefor, or the order so made or not; provided, that the said court may in its discretion require notice of such an application so made to be given in reference to any matter that may come before it for hearing, and in such case it shall direct, by an order, the form and manner of giving such notice required by it" 1965 Perm. Supp., C.R.S. 1963, 11-1-54 (Emphasis added.)

*"Inventory filed where — bond.— The assignee shall file with the clerk of the district or county court of the county in which such deed of assignment is recorded, a true and complete inventory and valuation of the property of the said assignor, under oath, so far as the same has come to his knowledge, within a period not to exceed six days from the date of the filing of the deed of assignment; and shall make and file a bond to the state of*

*Colorado, for the use of the creditors in double* the amount of the inventory and valuation, with sureties to be approved by such clerk for the faithful performance of said trust and for a full and complete accounting for and of all property that may come into his hands as such assignee. Such assignee shall have no power or authority to sell or dispose of, or convert to the purposes of the trust any part of such estate, until he shall have complied with the provisions of this section. C.R.S. 1963, 11-1-6 (Emphasis added.)

*"Assignee an officer of court. — An assignee named and qualified under this article, shall be held and deemed to be an officer of court. Any interference with said assignee in the discharge of his duties shall be contempt of court, and no suit against any assignee in relation to,* or concerning the property assigned, shall be instituted against said assignee without permission of the court within and for the county wherein the assignment is made, first had and obtained." C.R.S. 1963, 11-1-7. (Emphasis added.)

We conclude that only upon hearing on the citation can it be determined whether the articles of property seized by Gould were in fact included among those validly assigned by Carlson's for Music, Inc., and were seized without right after the property came under the jurisdiction of the court. If such be established, then a Citation for Contempt against Gould for failure to comply with lawful order of the court concerning such property would be the remedy as provided in section 11-1-7. It has been established in Colorado that "one who interferes with property in the custody of the law without permission of the court in whose custody it is, is guilty of contempt." *Clear Creek Co. v. Cutler,* 79 Colo. 355, 245 P. 939 (1926). This also assumes — a matter we do not decide — that the statutory procedures and rules of civil procedure have been followed in all particulars as will give the court its original jurisdiction.

The ruling of the district court is reversed and the cause remanded with directions to enter an order in said

proceedings suspending the operation of sections 11-1-27 and 11-1-34 to 50 inclusive, and to reinstate the citation for contempt with further proceedings to follow consonant with the views enunciated herein.

MR. CHIEF JUSTICE PRINGLE not participating.